# No. 16-3539

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

―――――――――

MARK CRAWFORD, RAND PAUL, IN HIS OFFICIAL CAPACITY AS A MEMBER
OF THE UNITED STATES SENATE, ROGER JOHNSON, DANIEL KUETTEL,
STEPHEN J. KISH, DONNA-LANE NELSON AND L. MARK ZELL,

**Plaintiffs-Appellants**

v.

UNITED STATES DEPARTMENT OF THE TREASURY, UNITED
STATES INTERNAL REVENUE SERVICE, AND UNITED STATES
FINANCIAL CRIMES ENFORCEMENT NETWORK,

**Defendants-Appellees**

―――――――――

## ON APPEAL FROM THE JUDGMENT OF
## THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

―――――――――

## BRIEF FOR THE APPELLEES

―――――――――

CAROLINE D. CIRAOLO
  *Principal Deputy Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG          **(202) 514-3361**
TERESA E. MCLAUGHLIN          **(202) 514-4342**
RICHARD CALDARONE          **(202) 514-2947**
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
*Of Counsel:*          *Washington, D.C. 20044*

BENJAMIN C. GLASSMAN
  *Acting United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents ...........................................................................i

Table of authorities ......................................................................v

Statement regarding oral argument.........................................xi

Jurisdictional statement ...............................................................1

Statement of the issues .................................................................2

Statement of the case ...................................................................2

A. The statutes, regulations, and intergovernmental agreements at issue .......................................................2

    1. FATCA............................................................................3

        a. U.S. taxpayers .............................................3

        b. Foreign financial institutions ......................4

    2. The intergovernmental agreements .....................6

    3. The BSA and the FBAR .........................................9

B. The original complaint.................................................10

    1. The claims ............................................................10

    2. The plaintiffs.......................................................12

C. Preliminary injunction proceedings in the District Court..........................................................................15

D. The motion to dismiss and the proposed amended complaint.....................................................................19

E. The District Court's opinion dismissing the complaint and denying leave to amend the complaint as futile .......................................................22

Summary of argument ..............................................................24

**Page**

Argument ...................................................................................29

I     The District Court correctly held that the allegations of
the original complaint do not establish standing to
pursue any of the claims at issue .........................................29

Standard of review ...............................................................29

A.     Standing to sue ..........................................................29

B.     Plaintiffs lack standing to challenge the reporting
provisions in FATCA or the FBAR..............................33

1.     The reporting provisions do not invade any
legally protected interest.....................................33

2.     The original complaint does not contain
allegations sufficient to show that plaintiffs
are subject to the reporting provisions ..............37

3.     Plaintiffs have alleged no injury-in-fact
traceable to the challenged reporting
provisions ...........................................................40

a.     The FBAR .................................................40

b.     The individual reporting requirements
of FATCA .....................................................41

c.     The institutional reporting provisions
of FATCA and the intergovernmental
agreements..................................................43

C.     Plaintiffs lack standing to raise their Eighth
Amendment claims ......................................................49

1.     Plaintiffs must, but do not, satisfy the
prerequisites to maintaining a pre-
enforcement challenge.........................................49

**Page**

       2.    Plaintiffs may not seek to vindicate the Eighth Amendment rights of third-party foreign financial institutions ...............................52

    D.    Plaintiffs lack standing to claim that the intergovernmental agreements exceed Executive authority ......................................................................54

          1.    The plaintiffs suing in their individual capacity lack standing to challenge the agreements ...........................................................54

          2.    Senator Paul may not challenge the intergovernmental agreements in his official capacity ...................................................56

II    The District Court correctly held that the proposed amended complaint would also be subject to dismissal on standing grounds ...............................................................59

Standard of review ........................................................................59

    A.    The new allegations concerning the named plaintiffs do not cure the deficiencies in the original complaint ...........................................................59

          1.    The reporting provisions .....................................60

          2.    The withholding tax pursuant to FATCA and the willful FBAR penalty .............................64

          3.    The intergovernmental agreements ...................65

    B.    None of the proposed plaintiffs has standing to raise the claims at issue ...............................................66

Conclusion ...................................................................................70
Addendum A .................................................................................71
Addendum B .................................................................................73

**Page**

Certificate of compliance .......................................................... 79

Certificate of service ................................................................ 80

-v-

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*ACLU v. NSA*,
    493 F.3d 644 (6th Cir. 2007) .................................................. 39

*Allen v. Wright*,
    468 U.S. 737 (1984) ................................................... 31, 33, 47

*Allstate Ins. Co. v. Wayne Cnty.*,
    760 F.2d 689 (6th Cir. 1985) .................................................. 46

*Alsheikh v. Lew*,
    N.D. Cal. No. 3:15-cv-3601, Dkt. 45 (Aug. 22, 2016) ............ 39

*Ammex, Inc. v. United States*,
    367 F.3d 530 (6th Cir. 2004) .................................................. 46

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
    135 S. Ct. 2652 (2015) ........................................................... 56

*Babbitt v. Farm Workers*,
    442 U.S. 289 (1979) ................................................... 31, 50, 51

*Baird v. Norton*,
    266 F.3d 408 (6th Cir. 2001) ........................................... 57, 58

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................... 32

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ............................................................... 52

*Cal. Bankers Ass'n v. Shultz*,
    416 U.S. 21 (1974) ................................................................. 37

*Campbell v. Clinton*,
    203 F.3d 19 (D.C. Cir. 2000) ................................................. 58

*Campeau v. Soc. Sec. Admin.*,
    575 F. App'x 35 (3d Cir. 2014) ............................................. 43

*Caplin & Drysdale, Chartered v. United States*,
    491 U.S. 617 (1989) ................................................... 30, 45, 53

*Chenoweth v. Clinton*,
    181 F.3d 112 (D.C. Cir. 1999) ......................................... 18, 58

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) .................................................. 33

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................... 31, 43

**Cases (continued):**                                      **Page(s)**

*City of Los Angeles v. Patel*,
    135 S. Ct. 2443 (2015) ........................................................... 36
*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ....................................31-33, 43, 44, 69
*Coleman v. Miller*,
    307 U.S. 433 (1939) ................................................................ 58
*Colvin v. Caruso*,
    605 F.3d 282 (6th Cir. 2010) .................................................. 59
*Crawford v. Roane*,
    53 F.3d 750 (6th Cir. 1995) .................................................... 59
*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    563 F.3d 466 (D.C. Cir. 2009) ............................................... 47
*Devlin v. Kalm*,
    594 F.3d 893 (6th Cir. 2010) .................................................. 24
*Flast v. Cohen*,
    392 U.S. 83 (1968) .................................................................. 29
*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................ 59
*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ............................................... 43
*Guest v. Leis*,
    255 F.3d 325 (6th Cir. 2001) .................................................. 35
*Haines v. Fed. Motor Carrier Safety Admin.*,
    814 F.3d 417 (6th Cir. 2016) ............................................ 29, 59
*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) ...................................................... 40, 41
*Humane Soc'y v. Babbitt*,
    46 F.3d 93 (D.C. Cir. 1995) ................................................... 41
*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,
    817 F.3d 1010 (7th Cir. 2016) ............................................... 44
*Humphreys, Hutcheson & Moseley v. Donovan*,
    755 F.2d 1211 (6th Cir. 1985) ............................................... 45
*Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*,
    500 U.S. 72 (1991) .................................................................. 33
*Kennedy v. City of Villa Hills*,
    635 F.3d 210 (6th Cir. 2011) .................................................. 24

## Cases (continued):                                          Page(s)

*Kerr v. Hickenlooper,*
  2016 WL 3126203 (10th Cir. June 3, 2016) .........................57
*Lance v. Coffman,*
  549 U.S. 437 (2007) .............................................55
*Larson v. Valente,*
  456 U.S. 228 (1982) .............................................32
*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................29, 30, 32, 34, 40, 55
*Massey v. Helman,*
  196 F.3d 727 (7th Cir. 1999) ....................................53
*McKay v. Federspiel,*
  823 F.3d 862 (6th Cir. 2016) ....................................52
*Nev. Comm'n on Ethics v. Carrigan,*
  564 U.S. 117 (2011) .............................................57
*Norton v. Ashcroft,*
  298 F.3d 547 (6th Cir. 2002) ...................30, 39, 42, 45, 46, 54
*NRA v. Magaw,*
  132 F.3d 272 (6th Cir. 1997) ....................................49
*Overstreet v. Lexington-Fayette Urban Cnty. Gov't,*
  305 F.3d 566 (6th Cir. 2002) ...............................35, 61
*O'Shea v. Littleton,*
  414 U.S. 488 (1974) .........................................31, 53
*Planned Parenthood Ass'n v. City of Cincinnati,*
  822 F.2d 1390 (6th Cir. 1987) ...................................52
*Powers v. Ohio,*
  499 U.S. 400 (1991) .............................................30
*Raines v. Byrd,*
  521 U.S. 811 (1997) .......................................18, 28, 33, 56-59
*Rakas v. Illinois,*
  439 U.S. 128 (1978) .............................................39
*Rosebrough v. Buckeye Valley High Sch.,*
  690 F.3d 427 (6th Cir. 2012) ....................................24
*Seaton v. TripAdvisor LLC,*
  728 F.3d 592 (6th Cir. 2013) ....................................60
*Simon v. Eastern Kentucky Welfare Rights Org.,*
  426 U.S. 26 (1976) .......................................31, 46, 47

**Cases (continued):**                                    **Page(s)**

*Singleton v. Wulff,*
 428 U.S. 106 (1976) ........................................................ 30, 45
*Smith v. Maryland,*
 442 U.S. 735 (1979) ................................................................ 35
*Smith v. Robbins & Myers,*
 2012 WL 5845072 (S.D. Ohio Nov. 19, 2012) ....................... 60
*Spencer v. Kemna,*
 523 U.S. 1 (1998) .................................................................... 53
*Spokeo, Inc. v. Robins,*
 136 S. Ct. 1540 (2016) ............................................... 30, 32, 61
*Susan B. Anthony List v. Driehaus,*
 134 S. Ct. 2334 (2014) ......................................... 17, 29, 31, 50
*Thiokol Corp. v. Dep't of Treas., State of Mich., Revenue Div.,*
 987 F.2d 376 (6th Cir. 1993) ................................................. 60
*U.S. ex rel. Sheldon v. Kettering Health Network,*
 816 F.3d 399 (6th Cir. 2016) ................................................. 60
*United States v. Bailey,*
 628 F.2d 938 (6th Cir. 1980) ................................................. 35
*United States v. Cochenour,*
 441 F.3d 599 (8th Cir. 2006) ................................................. 53
*United States v. Hatcher,*
 323 F.3d 666 (8th Cir. 2003) ................................................. 45
*United States v. Hays,*
 515 U.S. 737 (1995) ................................................................ 34
*United States v. Miller,*
 425 U.S. 435 (1976) ...................................... 18, 25, 34-36, 61
*United States v. Sturman,*
 951 F.2d 1466 (6th Cir. 1991) ............................................... 35
*United States v. Warshak,*
 631 F.3d 266 (6th Cir. 2010) ................................................. 34
*Warth v. Seldin,*
 422 U.S. 490 (1975) ................................. 30, 32, 45, 46, 53, 61
*White v. United States,*
 601 F.3d 545 (6th Cir. 2010) ..................................... 34, 36, 61

**Statutes:**                                                                      Page(s)

26 U.S.C. (I.R.C.):

§ 911(d)(1) ................................................................... 4

§ 1471 ................................................................... 5, 6, 8

§ 1471(a) ............................................................. 4, 5, 11

§ 1471(b) ................................................................... 4

§ 1471(b)(1)(A) ............................................................. 4

§ 1471(b)(1)(D) ................................................. 5, 11, 17

§ 1471(b)(2)(A) ............................................................. 6

§ 1471(b)(2)(B) ......................................................... 6, 8

§ 1471(c)(1) ........................................................... 5, 10

§ 1471(c)(2) ................................................................. 6

§ 1471(d)(1)(B) ............................................................. 6

§ 1471(d)(6) ................................................................. 5

§ 1473(1)(A) ................................................................. 4

§ 6038D(a) ................................................................... 3

§ 6038D(c)(1) ............................................................... 3

§ 6038D(c)(4) ........................................................... 3, 10

§ 6038D(d) ................................................................... 3

§ 7421(a) ................................................................... 19


28 U.S.C.:

§ 1291 ....................................................................... 2


31 U.S.C.:

§ 5314(a) ................................................................... 9

§ 5321(a)(5)(A) ......................................................... 9, 49

§ 5321(a)(5)(B) ............................................................ 10

§ 5321(a)(5)(C) ....................................................... 10, 11

§ 5321(a)(5)(D) ............................................................ 10

**Regulations:**                                                    **Page(s)**

26 C.F.R. (Treas. Reg.):
  § 1.1471-1(b)(78) ................................................................. 7
  § 1.1471-1(b)(79) ............................................................. 6, 8
  § 1.1471-2T(a)(1) ............................................................. 4, 11
  § 1.1471-1(a)(1) ............................................................... 5, 11
  § 1.1471-4(d) ................................................................... 5, 10
  § 1.1471-4(d)(3)(v) ............................................................... 5
  § 1.1471-4T(b)(1) ............................................................. 5, 11
  § 1.1471-5(f) ........................................................................ 6
  § 1.6038D-2(a) ................................................................... 62
  § 1.6038D-2(a)(1) ................................................................. 3
  § 1.6038D-2(a)(3) ................................................................. 4
  § 1.6038D-2(b)(1) ............................................................... 62
  § 1.6038D-4(a)(5)-(6) & (8) .......................................... 3, 10

31 C.F.R.:
  § 1010.306(c) ....................................................................... 9
  § 1010.350(a) ..................................................................... 62

**Other authorities:**

156 Cong. Rec. S1745-01 .......................................................... 3
Fed. R. App. P. 4(a)(1)(B) ...................................................... 2
Fed. R. Civ. P. 15(a)(2) ......................................................... 59
FinCEN, *Important Notice to BSA E-Filers* (Sept. 30, 2013) .......... 9
Hiring Incentives to Restore Employment Act,
  Pub. L. No. 111-147, 124 Stat. 71 (Mar. 18, 2010) ................. 1
IRS Announcement 2014-38 ..................................................... 51
IRS Announcement 2016-27 ....................................................... 8
"Israel's Knesset Committee Approves FATCA Reporting
  Procedures," Bloomberg BNA Daily Tax Reporter,
  No. 150 (Aug. 4, 2016) ....................................................... 7, 8

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns whether appellants have standing to seek to enjoin significant portions of federal statutes, related regulations, and numerous intergovernmental agreements aimed at curbing offshore tax evasion.  Appellees therefore believe that oral argument should be heard.

## JURISDICTIONAL STATEMENT

Plaintiffs seek to enjoin portions of the Foreign Account Tax Compliance Act ("FATCA")[1] and associated regulations, intergovernmental agreements reached between the United States and foreign countries to facilitate implementation of FATCA, and portions of the Bank Secrecy Act ("BSA") and the Report of Foreign Bank and Financial Accounts ("FBAR").  (Compl., RE 1, PageID #1-59.)[2]  The District Court held that it lacked subject matter jurisdiction over the complaint because none of the plaintiffs has standing to pursue the claims at issue.  (Op., RE 42, PageID #628-54.)  As shown below (at 29-69), the District Court was correct.

The District Court entered judgment in the Government's favor (RE 43, PageID #655) on April 26, 2016.  Plaintiffs filed a timely notice

---

[1] *See* Title V, Subtitle A of the Hiring Incentives to Restore Employment Act, Pub. L. No. 111-147, §§ 501-535, 124 Stat. 71, 97-115 (Mar. 18, 2010).

[2] Citations to "RE __" are to record entries in the District Court. Citations in the form "Model 1 IGA ___" are to the Model 1 intergovernmental agreements at issue (*see infra* p. 7), and citations in the form "IGA ___" are to all of the challenged intergovernmental agreements.  References to "Br. __" are to appellants' opening brief.

of appeal (RE 44, PageID #656-57) on May 23, 2016.  *See* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly concluded that plaintiffs lack standing to raise the claims at issue because they have not alleged that any of the challenged provisions of FATCA, the BSA and the FBAR, or the intergovernmental agreements invade a legally protected interest, apply to them, or cause them an ongoing or imminent injury-in-fact.

2.    Whether the District Court correctly denied plaintiffs' motion to amend the complaint as futile because the proposed amended complaint does not cure the deficiencies in plaintiffs' allegations concerning standing.

## STATEMENT OF THE CASE

### A.    The statutes, regulations, and intergovernmental agreements at issue

This case involves three sets of legal provisions—FATCA and associated regulations; intergovernmental agreements that facilitate the implementation of FATCA; and the BSA and the FBAR.

### 1.    FATCA

Congress enacted two reporting regimes as part of FATCA in order to improve tax compliance by U.S. taxpayers with foreign bank accounts. *See, e.g.*, 156 Cong. Rec. S1745-01 (remarks of Sen. Levin).

### a.    U.S. taxpayers

The first reporting regime applies to U.S. taxpayers who hold certain foreign financial assets, including foreign bank accounts. They must disclose "the name and address of the financial institution" that maintains the accounts. 26 U.S.C. ("I.R.C.") § 6038D(c)(1). They must also report the account numbers, "[t]he maximum value" of the accounts "during the taxable year," the "amount of any income, gain, loss, deduction or credit" on the accounts, and the opening or closure of certain accounts. *Id*. § 6038D(c)(4); 26 C.F.R. ("Treas. Reg.") § 1.6038D-4(a)(5)-(6) & (8).[3] These requirements apply to individual U.S. taxpayers only if the individual holds more than $50,000 in foreign financial assets at the end of a taxable year or more than $75,000 in such assets at any time during the year. I.R.C. § 6038D(a); Treas. Reg.

---

[3] FATCA imposes a penalty on any account holders who do not comply with the individual reporting requirement. *See* I.R.C. § 6038D(d). Plaintiffs do not challenge that penalty.

§ 1.6038D-2(a)(1).  For individuals who live abroad full time, the

threshold amounts are $200,000 and $300,000, respectively.  Treas.

Reg. § 1.6038D-2(a)(3) (citing I.R.C. § 911(d)(1)).

## b.    Foreign financial institutions

The other reporting regime encourages foreign financial

institutions to disclose information on accounts held by U.S. taxpayers

by entering into an agreement to do so with the Secretary of the

Treasury ("Secretary").  Although the statute refers to "reporting

requirements" applicable to foreign financial institutions (*see* I.R.C.

§ 1471(b)), reporting is not mandated, since such an institution may

decline to report and instead have a 30% tax withheld from certain

U.S.-sourced income payable to it (*see* I.R.C. §§ 1471(a) & 1473(1)(A);

*see also* Treas. Reg. § 1.1471-2T(a)(1)).

A foreign financial institution choosing to comply with FATCA in

lieu of being subject to the withholding tax must make a threshold

determination concerning which accounts are subject to FATCA.  I.R.C.

§ 1471(b)(1)(A).  For accounts that are subject to FATCA, the

institutions must report information including account numbers and

balances, the name, address, and taxpayer identification number of the

account holder, and "the gross receipts and gross withdrawals or payments from the account." *Id.* § 1471(c)(1)(A)-(D); *see also* Treas. Reg. § 1.1471-4(d). The report must be made on IRS Form 8966 (*see* Treas. Reg. § 1.1471-4(d)(3)(v)), which asks, among other things, for the total interest paid on the account (*see* Form 8966, https://www.irs.gov/ pub/irs-pdf/f8966.pdf).

A foreign financial institution must also deduct and withhold a 30% tax on certain "passthru" payments received by any "recalcitrant" account holder (I.R.C. § 1471(b)(1)(D); *see also* Treas. Reg. §§ 1.1471-4(a)(1) & 1.1471-4T(b)(1)) who fails to comply with reasonable requests made by a financial institution for information related to the institution's duties under FATCA (I.R.C. § 1471(d)(6)). This withholding tax (sometimes referred to below as the "institutional withholding tax") is separate from the withholding tax imposed by I.R.C. § 1471(a) on foreign financial institutions that choose not to comply with FATCA.

The provisions of I.R.C. § 1471 do not apply to all financial institutions or to all accounts. Institutions need not report information concerning depository accounts held by individuals for whom the

institution maintains less than $50,000 in total assets.  I.R.C.

§ 1471(d)(1)(B).  Moreover, instead of reporting information under

FATCA, a financial institution may either comply with regulations

designed to "ensure that [it] does not maintain" accounts for U.S.

persons (*id.* § 1471(b)(2)(A); *see also* Treas. Reg. § 1.1471-5(f))) or agree

to abide by the reporting provisions that apply to U.S. banks (I.R.C.

§ 1471(c)(2)).  And the Secretary may exempt institutions from § 1471 if

he determines that application of that section "is not necessary to carry

out the purposes of" FATCA.  *Id.* § 1471(b)(2)(B).

## 2. The intergovernmental agreements

The United States has reached agreements with many foreign

governments to "facilitate the implementation of FATCA" (Treas. Reg.

§ 1.1471-1(b)(79); *see also* IGA preamble) and "to improve international

tax compliance" (Model 1 IGA preamble; *see also* Swiss IGA preamble).[4]

Those agreements take two forms.  Both forms, like FATCA itself,

specify that the reporting provisions need not apply to depository

accounts with less than $50,000.  *See* IGA Annex I, §§ II.A.4 & III.A.1.

---

[4] The agreements at issue are found at https://www.treasury.gov/
resource-center/tax-policy/treaties/Pages/FATCA.aspx.

"Model 1" agreements, including the agreements with Canada, the Czech Republic, Denmark, France, and Israel, "implement FATCA through reporting by financial institutions to [a] foreign government or agency thereof, followed by automatic exchange of the reported information with the IRS." Treas. Reg. § 1.1471-1(b)(78). The foreign government agrees to disclose, *inter alia*, the value of certain accounts held by "U.S. Persons," including U.S. citizens, with that country's financial institutions and, in the case of depository accounts, the total amount of interest paid to the account. Model 1 IGA Art. 2, § 2(a)(4) & (6). In turn, any financial institution in that country that reports information under the agreement "shall be treated as complying with, and not subject to withholding under," FATCA. *Id.* Art. 4, § 1. In addition, those institutions need not withhold tax from recalcitrant account holders. *Id.* Art. 4, § 2.

Unlike the other Model 1 agreements at issue, the agreement with Israel is not yet in force.[5] *See* Israeli IGA Art. 10, § 1. The Secretary

---

[5] The finance committee of the Knesset (Israel's legislative body) has reportedly approved regulations enabling the implementation of FATCA that provide, among other things, for the Israeli Tax Authority to forward information to the IRS by September 30, 2016. "Israel's Knesset Committee Approves FATCA Reporting Procedures,"

nevertheless exercised his discretion under I.R.C. § 1471(b)(2)(B) to

treat Israeli financial institutions as complying with § 1471 even before

the agreement is in force. *See* IRS Announcement 2016-27,

https://www.irs.gov/pub/irs-drop/a-16-27.pdf. Israeli banks are

therefore not currently subject to the FATCA withholding tax. *See id.*

 "Model 2" agreements, such as the agreement with Switzerland,

provide for "reporting by [foreign] financial institutions directly to the

IRS * * *, supplemented by the exchange of information between [the]

foreign government or agency thereof and the IRS." Treas. Reg.

§ 1.1471-1(b)(79). As relevant here, the Swiss government has agreed

to direct its financial institutions to "register with the IRS" and comply

with the "due diligence, reporting, and withholding" provisions of

FATCA. Swiss IGA Art. 3, § 1(a). Article 5 of the agreement permits

the United States to make "group requests" to the Swiss government for

information about non-consenting account holders and non-

participating financial institutions. *Id.* Art. 5, § 1. Article 5, however,

---

Bloomberg BNA Daily Tax Reporter, No. 150 at I-2–I-3 (Aug. 4, 2016).
Although those regulations "still require full parliamentary approval,"
such approval is expected "'in the coming weeks.'" *Id.* at I-3 (Aug. 4,
2016).

is not in effect, because the Senate has not yet approved a necessary protocol. *See id.*; *see also* Op., RE 42, PageID #637. Nevertheless, under the agreement, the FATCA withholding tax is generally not being applied to Swiss financial institutions or account holders in those institutions.

### 3. The BSA and the FBAR

In the BSA, Congress required all U.S. persons who have relationships with foreign financial agencies to file the FBAR. *See* 31 U.S.C. § 5314(a). In this context, "U.S. persons" include both permanent U.S. residents and U.S. citizens, regardless of residence, who have an interest in, or signatory authority over, foreign financial accounts that exceed $10,000 in the aggregate. 31 C.F.R. § 1010.306(c). The FBAR must be submitted on Financial Crimes Enforcement Network ("FinCEN") Form 114. *See* FinCEN, *Important Notice to BSA E-Filers*, http://www.fincen.gov/whatsnew/html/20130930.html (Sept. 30, 2013). Form 114 requires information including the maximum account balance during the reporting year.

The Secretary may impose "a civil money penalty on any person" who fails to file a required FBAR. 31 U.S.C. § 5321(a)(5)(A). Generally,

such penalties may "not exceed $10,000" and are subject to a

reasonable-cause defense.  *Id.* § 5321(a)(5)(B).  For willful violations,

however, the reasonable-cause defense does not apply, and the

maximum per-violation penalty is "the greater of $100,000" or 50% of

the account value at the time of the violation.  *Id.* § 5321(a)(5)(C)-(D).

## B.    The original complaint

### 1.    The claims

Plaintiffs' complaint seeks to raise three groups of claims.[6]  The

first group (Counts 3, 7, and 8) alleges that the reporting provisions of

FATCA and the parallel provisions of the intergovernmental

agreements constitute searches in violation of the Fourth Amendment,

and that both these provisions and FinCEN Form 114 deny equal

protection to U.S. citizens living abroad, as opposed to those living in

the United States.  (Compl., RE 1, PageID #40-42, 46-48.)  On these

grounds, the complaint seeks to enjoin the enforcement of FATCA's

individual and institutional reporting provisions (I.R.C. §§ 1471(c)(1) &

6038D(c)(4); Treas. Reg. §§ 1.1471-4(d) & 1.6038D-4(a)(5)-(6) & (8)), the

---

[6]  For purposes of this appeal, the Government assumes that the
factual allegations in the original and proposed amended complaints are
true.

-11-

use of IRS Form 8966 and FinCEN Form 114, and the information-

sharing provisions of the intergovernmental agreements (Model 1 IGA

Art. 2; Swiss IGA Arts. 3 & 5).

The second group of claims (Counts 4 through 6) seeks to enjoin

the 30% withholding taxes that apply to non-compliant financial

institutions (I.R.C. § 1471(a); Treas. Reg. § 1.1471-2T(a)(1)) and

recalcitrant account holders (I.R.C. § 1471(b)(1)(D); Treas. Reg.

§§ 1.1471-4(a)(1) & 1.1471-4T(b)(1)) under FATCA, a related provision

of the Model 1 intergovernmental agreements (Model 1 IGA Art. 4, § 2),

and the willful FBAR penalty (31 U.S.C. § 5321(a)(5)(C) as allegedly in

violation of the Eighth Amendment's prohibition against excessive

fines.  (Compl., RE 1, PageID #42-46.)  And the final group of claims

(Counts 1 and 2) seeks to enjoin implementation of the

intergovernmental agreements with Canada, the Czech Republic,

Israel, and Switzerland in their entirety on the theories that the

agreements exceed Executive authority and are inconsistent with

FATCA.  (Compl., RE 1, PageID #37-40.)

### 2.    The plaintiffs

The plaintiffs who seek to advance these claims include four current and two former U.S. citizens who live abroad ("the individual plaintiffs") and Senator Rand Paul, who seeks to appear only in his official capacity.  In an attempt to establish standing, the complaint alleges that all six individual plaintiffs do "not want the financial details of [their] accounts * * * disclosed to the United States government."  (Compl., RE 1, PageID #12, 15, 17, 23, 27; *see also* PageID #20.)  And the complaint alleges, without elaboration, that they "reasonably fear[ ]" that they or their family members "will be subject to" an FBAR penalty if they "willfully fail[ ] to file an FBAR for the accounts."  (Compl., RE 1, PageID #12, 15-17, 20, 23, 27.)

The complaint also includes plaintiff-specific attempts to establish standing.  The U.S. citizen plaintiffs include Mark Crawford, who lives and owns "an international investment and advisory firm" in Albania. (Compl., RE 1, PageID #9, 11.)  Crawford alleges that he "applied for a brokerage account with his own company and was denied" because Saxo Bank, a Danish bank with which his firm works, will not accept U.S. clients.  (Compl., RE 1, PageID #11-12.)  Crawford alleges that Saxo has

this policy "in part" because it does not want to comply with FATCA

and that Saxo's policy has caused him economic harm, because it means

his firm "turn[s] away prospective American clients." (*Id*.)

Two other U.S. citizens seek to pursue this suit on the basis of

marital issues. Stephen Kish, who lives in Canada and is married to a

Canadian, alleges that "FATCA has at times caused some discord" with

his wife. (Compl., RE 1, PageID #16-17.) And Roger Johnson, who lives

in the Czech Republic and is married to a Czech citizen, alleges that he

and his wife "decided to legally separate" their assets because of his

wife's objections to FATCA, leaving him without an ownership interest

in several assets. (Compl., RE 1, PageID #13-15.)

L. Marc Zell is a U.S. citizen who lives and works as a lawyer in

Israel. (Compl., RE 1, PageID #24.) Zell alleges that he has declined to

answer his Israeli bank's FATCA-related inquiries. (Compl., RE 1,

PageID #27.) Zell further alleges that, in the wake of FATCA, Israeli

banks have adopted policies that harm his clients and violate the

attorney-client privilege. (Compl., RE 1, PageID #25-27.) And he

alleges that he lost non-U.S. clients, and fees, because banks asked the

clients to fill out IRS forms after learning that Zell or his firm had

trustee or fiduciary responsibilities over the clients' accounts.  (Compl.,
RE 1, PageID #25-26.)

The remaining two individual plaintiffs are former U.S. citizens
living in Switzerland.  (Compl., RE 1, PageID #17, 20.)  Daniel Kuettel
alleges that he "relinquished his U.S. citizenship in 2012" after
attempts to refinance his mortgage proved "mostly unsuccessful."
(Compl., RE 1, PageID #19.)  Kuettel then did obtain refinancing.  (*Id.*)
Kuettel also alleges that he "maintains a college savings account for his
daughter," a U.S. citizen, and "would like to transfer ownership of the
account to her," but has not done so out of fear of the willful FBAR
penalty.  (Compl., RE 1, PageID #19-20.)  Donna-Lane Nelson,
meanwhile, alleges that she relinquished her U.S. citizenship after her
local bank told her that "she would not be able to open a new account if
she ever closed her existing one."  (Compl., RE 1, PageID #22.)  Nelson
further alleges that she is married to a U.S. citizen, that her banks
continue to question her about her U.S. ties, and that she "resents"
answering such questions.  (Compl., RE 1, PageID #22-23.)

Unlike the other plaintiffs, Senator Rand Paul claims standing
only to raise the claims alleging that the intergovernmental agreements

exceed Executive authority.  Senator Paul alleges that he may do so because he has been denied the opportunity to vote against those agreements in the Senate.  (Compl., RE 1, PageID #13.)

## C.   Preliminary injunction proceedings in the District Court

Plaintiffs moved for a preliminary injunction on all of their claims. (PI Mot., RE 8, PageID #135-38.)  The Government opposed the motion on various grounds (RE 16, PageID #196-252), and the District Court denied the motion (RE 30, PageID #382-418).

In doing so, the District Court primarily held that plaintiffs lack standing to bring those claims.  (PI Order, RE 30, PageID #391-404.) The court identified two general problems with the complaint:  "No plaintiff has alleged that he or she is subject to" required FATCA "reporting due to an aggregate net value exceeding $50,000 or FBAR reporting due to a bank account exceeding $10,000 in value."  (PI Order, RE 30, PageID #396.)  And plaintiffs' "discomfort with" the reporting provisions of FATCA and the FBAR cannot establish standing, because that discomfort "does not establish [a] concrete, particularized harm." (*Id*; *accord* PI Order, RE 30, PageID #397-98, 401.)

-16-

The District Court further held that the plaintiff-specific allegations do not state any cognizable injury traceable to the challenged reporting provisions.  The court held that Kish's claim of marital discord is "too vague and indirect * * * to establish standing." (PI Order, RE 30, PageID #398.)  It held that Kuettel's difficulty in refinancing his mortgage constitutes "past harm" that is not redressable in a suit seeking injunctive relief.  (PI Order, RE 30, PageID #399.)  The District Court concluded that Johnson's separation of his marital assets represented a self-inflicted harm that is not traceable to the challenged provisions.  (PI Order, RE 30, PageID #397.)  Further, it held that any injury suffered by Crawford, Kuettel, Nelson, or Zell was traceable to the policies of financial institutions, rather than FATCA.  (PI Order, RE 30, PageID #396, 400, 402.)  And the court disposed of any alleged injuries to the plaintiffs' family members or Zell's clients on the ground that plaintiffs may not assert claims on behalf of third parties.  (PI Order, RE 30, PageID #397-400, 402.)

The District Court also held that plaintiffs lack standing to challenge the FATCA withholding taxes and the willful FBAR penalty. The Court reasoned that none of the plaintiffs is a financial institution

"to which the tax under § 1471(a) applies." (PI Order, RE 30, PageID #395.) And although recalcitrant account holders are also subject to withholding under § 1471(b)(1)(D), the court held that, because of the intergovernmental agreements, "all [p]laintiffs but Crawford live in jurisdictions where" the tax does not apply, and that no plaintiff "has been assessed, or informed that [the] IRS intends to assess," the tax. (PI Order, RE 30, PageID #395-96.) As to the willful FBAR penalty, the District Court noted that plaintiffs did not allege either that they "failed to file any FBAR that may have been required" or "that the Government has assessed an 'excessive' FBAR penalty against [them]." (PI Order, RE 30, PageID #396; *see also* PageID #397-98, 400-01, 403.)

The District Court then rejected any argument that the mere existence of the statutes, regulations, and agreements at issue "might suffice for standing." (PI Order, RE 30, PageID #404.) It held instead that to raise a pre-enforcement challenge, plaintiffs must "allege[ ] 'an intention to engage in a course of conduct arguably affected with a constitutional interest.'" (*Id.* (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014)).) And the court held that plaintiffs "have not identified a constitutionally protected interest."

(*Id.*)  Although they allege a perceived "invasion of privacy," the "Supreme Court has held that depositors have no 'reasonable expectation of privacy' in 'information kept in bank records.'"  (*Id.* (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976)).)

Finally, the District Court held that the Supreme Court's holding in *Raines v. Byrd*, 521 U.S. 811 (1997), precluded Senator Paul from establishing standing to challenge the intergovernmental agreements. *Raines* held that individual "members of Congress" may not base standing on an alleged "loss of political power" that applies equally to all legislators.  (PI Order, RE 30, PageID #394.)  Because Senator Paul's alleged injury involved the denial of his asserted right to vote on the intergovernmental agreements, the court concluded that "*Raines* bars [his] claims."  (*Id.*)  Moreover, "[t]his is true even if [Senator Paul] frames the conduct he challenges as a 'usurpation' of congressional authority."  (*Id.* (citing, *inter alia*, *Chenoweth v. Clinton*, 181 F.3d 112, 116 (D.C. Cir. 1999)).)

The District Court believed that the Government had conceded that Kuettel had standing to raise plaintiffs' equal protection claim and the Eighth Amendment challenge to the willful FBAR penalty.  (PI

Order, RE 30, PageID #399, 404.)  It therefore reached the merits of

those claims, but held that neither was likely to succeed.  (PI Order, RE

30, PageID #408; *see also* PageID #412.)

### D.   The motion to dismiss and the proposed amended complaint

The Government moved (RE 26, PageID #318-19) to dismiss the

complaint for lack of subject matter jurisdiction on the grounds that

plaintiffs lack standing, their claims are barred by the Anti-Injunction

Act, I.R.C. § 7421(a), and the Eighth Amendment claims are not ripe

(RE 27, PageID #326-42).  In the alternative, the Government argued

(RE 26, PageID #318-19; RE 27, PageID #342-53) that the complaint

should be dismissed for failure to state a claim upon which relief could

be granted.

Plaintiffs opposed the motion.  (MTD Opp'n, RE 37, PageID #554-

89.)  In addition, plaintiffs filed a motion for leave to file an amended

complaint (RE 32, PageID #424-27) and a proposed amended complaint

(RE 32-1, PageID #428-505).  In addition to the claims raised in the

original complaint, the proposed complaint sought to enjoin

intergovernmental agreements with Denmark and France because

Crawford's firm and Nelson have relationships with financial

institutions in those respective countries.  (Prop. Compl., RE 32-1,
PageID #485-87.)  It also challenged the provision of the Model 1
agreements that concerns reporting of account balances, rather than
the provision concerning the reporting of interest.  (*Compare* Compl.,
RE 1, PageID #49, *with* Prop. Compl., RE 32-1, PageID #486-87.)

In an attempt to establish standing, the proposed complaint
alleged, without elaboration, that each plaintiff "now suffers, and will
continue to suffer, concrete and particularized injuries to legally
protected interests, which injuries are caused by the challenged
government actions and will be redressed by the requested relief."
(Prop. Compl., RE 32-1, PageID #440, 443, 447, 450; *see also* PageID
#441.)  It further alleged that the account balances of all six individual
plaintiffs exceeded $10,000 in either 2014 or 2015, that Johnson's
account balance exceeded $75,000 in both years, and that Zell "had
signatory authority over accounts with an aggregate year-end balance
of greater than $200,000 in 2014."  (Prop. Compl., RE 32-1, PageID
#439, 443, 446, 449, 455, 461.)

The proposed complaint also attempted to elaborate on the
plaintiff-specific allegations.  Crawford alleges that he is the only

applicant from his firm that Saxo Bank "ever rejected" and that Saxo did so because it "is turning away U.S. citizens" rather than reporting information under the intergovernmental agreement with Denmark. (Prop. Compl., RE 32-1, PageID #439.) Kuettel alleges that Swiss banks had a secret policy of not serving U.S. citizens. (Prop. Compl., RE 32-1, PageID #448.) Nelson alleges that she knows "of many accounts of U.S. citizens that ha[ve] been closed" by foreign banks (Prop. Compl., RE 32-1, PageID #454), while Zell alleges that he "is not currently complying" with either FATCA or the FBAR requirement (Prop. Compl., RE 32-1, PageID #461).

Finally, the proposed complaint sought to add three new plaintiffs—Johnson's wife, Kuettel's daughter, and Nelson's husband. Dr. Katerina Johnson is a Czech citizen who keeps separate assets from her husband because she "strongly objects to having her personal financial affairs disclosed to the [U.S.] government." (Prop. Compl., RE 32-1, PageID #444.) Lois Kuettel is a 10-year-old citizen of the United States, Switzerland, and the Philippines who would receive financial advantages if she had "a bank account in her [own] name," but whose parents will not transfer the account to her because they do not want to

file an FBAR.  (Prop. Compl., RE 32-1, PageID #451-52.)  And Richard

Adams is a U.S. citizen who fears that he "will soon receive a letter"

closing the joint bank account he maintains with Nelson "because of his

U.S. citizenship."  (Prop. Compl., RE 32-1, PageID #457.)  Adams

alleges that, if this happens, he might have "difficulty opening an

account" in his own name.  (*Id*.)

The Government opposed plaintiffs' motion to amend as futile (RE

34, PageID #509) on the ground that the proposed complaint would be

subject to dismissal for the same reasons as the original pleading.

### E.   The District Court's opinion dismissing the complaint and denying leave to amend the complaint as futile

The District Court granted the Government's motion to dismiss

and denied as futile plaintiffs' motion for leave to file an amended

complaint.  (Op., RE 42, PageID #628-54.)  The District Court noted

that the Government had not conceded that any plaintiff has standing

to raise any of the claims at issue.  (Op., RE 42, PageID #642, 647.)  The

court then held that the allegations of the original complaint were

insufficient to establish standing for the reasons stated in its order

denying a preliminary injunction.  (Op., RE 42, PageID #640-52.)

The District Court further held that the allegations added in the proposed amended complaint would not cure those shortcomings. Although the proposed complaint "recit[es] the elements" of standing as to each of the plaintiffs, the court held that merely doing so without alleging a specific injury "is not sufficient to convey standing." (Op., RE 42, PageID #645; *see also* PageID #641, 647.) It further held that the new allegations concerning Crawford's dealings with Saxo and Kuettel's experience with Swiss banks leave any link between their alleged injuries and FATCA "dependent on speculation" concerning the actions of the third-party banks. (Op., RE 42, PageID #643-44, 648-49.) The court held that Nelson may not pursue relief on the basis of "hypothetical harm to" other individuals whose banks closed their accounts (Op., RE 42, PageID #650) and that Zell may not challenge the FATCA withholding tax or the FBAR penalty because neither has been imposed on him (Op., RE 42, PageID #652). Finally, the District Court held that the proposed plaintiffs lacked standing for the same reasons as their family members who are named in the original complaint. (Op., RE 42, PageID #645-51.)

-24-

Because it concluded that no plaintiff has standing and that the amended complaint would not cure that deficiency, the District Court did not address the remaining arguments raised in the Government's motion to dismiss.  (Op., RE 42, PageID #653.)

Plaintiffs now appeal.[7]

## SUMMARY OF ARGUMENT

The question whether plaintiffs have standing to sue implicates a claim-by-claim determination whether the complaint alleges any injury-in-fact traceable to the challenged provisions of FATCA, the BSA and the FBAR, or the intergovernmental agreements.  Plaintiffs' brief on

---

[7]  Plaintiffs limit their appeal to the question of standing.  (*See* Br. 22 ("The district court only decided a standing challenge under rule 12(b)(1), so other asserted dismissal grounds are not addressed here.").)  If this Court were to conclude that plaintiffs have standing to raise one or more of their claims, the case should be remanded to the District Court to allow that court to consider the other arguments presented in the Government's motion to dismiss.  *See, e.g., Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 433 (6th Cir. 2012); *Devlin v. Kalm*, 594 F.3d 893, 893 (6th Cir. 2010); *see also, e.g., Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 n.2 (6th Cir. 2011) (appellees do not waive arguments by declining to present them on appeal).  Although plaintiffs' brief on appeal contains contentions that implicate only the merits of their claims (*e.g.*, Br. 26-27 & n.7, 36 n.16), those contentions are incorrect.  But because those contentions are not relevant to standing— and rely in part on factual material not presented to the District Court (*see* Br. 26-27 n.7)—we need not and do not respond to them here.  *Kennedy*, 635 F.3d at 214 n.2.

appeal largely eschews this inquiry in favor of assertions that FATCA has caused difficulties for unnamed third parties, that it threatens harm—such as hacking and disclosure to foreign governments—unmentioned in either complaint, and that, contrary to the Supreme Court's express holding in *United States v. Miller*, 425 U.S. 435 (1976), they have a constitutionally protected privacy interest in their account information. These digressions cannot show that plaintiffs have standing to bring this suit. They do not. As shown in Part I below, the original complaint does not establish that plaintiffs have standing to raise any of the claims at issue, and as shown in Part II below, the proposed amended complaint fares no better.

1. a. As stated in the original complaint, plaintiffs' Fourth Amendment challenge to the reporting provisions in FATCA and the intergovernmental agreements, and their equal protection challenge to those provisions and the FBAR, contain three fundamental shortcomings. First, plaintiffs theorize that those provisions violate their right to the privacy of their account information. But this line of argument is foreclosed by the Supreme Court's holding in *Miller* that no

such right exists.  The result is that plaintiffs have not, and cannot,
allege that the reporting provisions invade a legally protected interest.

Second, plaintiffs also fail to allege that they are even subject to
required reporting under either FATCA or the FBAR.  And plaintiffs
clearly are not entitled to sue on behalf of other individuals or foreign
financial institutions who are subject to such reporting.

Third, even if plaintiffs could overcome these initial obstacles, it
would make no difference.  In some instances, plaintiffs assert no more
than generalized grievances with the policies behind the challenged
provisions, shared in common with other members of the public.  In
others, they complain of harm that flows from independent decisions
made by third parties not before the court.  They even seek redress from
self-inflicted injuries.  None of their alleged injuries is both sufficient to
support a suit for injunctive relief and traceable to FATCA or the
FBAR.

b.    The Eighth Amendment claims concerning the withholding
tax pursuant to FATCA and the willful FBAR penalty, meanwhile, are
pre-enforcement challenges.  Plaintiffs may therefore raise those claims
only if they allege an intention to engage in conduct that violates the

law but is arguably protected by a constitutional interest and have a reasonable fear of prosecution. The complaint satisfies none of those criteria. Because plaintiffs lack a privacy interest in their account information, violations of FATCA or the FBAR requirement are not affected with a constitutional interest. Moreover, only one plaintiff—Zell—alleges an intention to violate the law, and his intention is restricted to FATCA. But Zell cannot have a reasonable fear of the FATCA withholding tax, because account holders with Israeli banks are currently not subject to the withholding tax. Furthermore, plaintiffs' challenge to the withholding tax that applies to financial institutions seeks to vindicate the *institutions'* alleged Eighth Amendment rights—something plaintiffs are not entitled to do.

c. The individual plaintiffs allege no harm that could support their claims that the intergovernmental agreements exceed Executive authority. Furthermore, because the agreements are intended to help implement FATCA, even if plaintiffs alleged a cognizable injury caused by the FATCA regime, the injury would not be redressed by a court order that enjoins only the agreements while leaving FATCA itself in place. And Senator Paul's claim that he has standing to challenge the

agreements because he was denied the opportunity to vote on them is precluded by *Raines v. Byrd*, 521 U.S. 811 (1997). As the Court there held, an individual member of Congress lacks standing to sue because he has no personal stake in an asserted injury to his voting power, which is institutional and runs with his seat.

2.    The District Court correctly denied plaintiffs' motion to amend the complaint as futile. The proposed amended complaint remedies only one of the numerous problems above—it alleges that plaintiffs' account balances exceed the threshold for FBAR filing. Nevertheless, that change, standing alone, does not suffice to show that any of the original plaintiffs has standing to raise any of their claims. They still fail to allege a concrete injury to any protected interest that is fairly traceable to FATCA, the intergovernmental agreements, or the BSA or the FBAR. And the allegations concerning the proposed new plaintiffs, which track allegations originally made by their relatives, simply perpetuate shortcomings in the original complaint.

The judgment of the District Court is correct and should be affirmed.

# ARGUMENT

# I

**The District Court correctly held that the allegations
of the original complaint do not establish standing to
pursue any of the claims at issue**

## Standard of review

This Court "review[s] *de novo* a district court's decision to dismiss
a claim for lack of subject matter jurisdiction." *Haines v. Fed. Motor
Carrier Safety Admin.*, 814 F.3d 417, 423 (6th Cir. 2016).

## A.    Standing to sue

"[T]he irreducible constitutional minimum of standing," rooted in
the case-and-controversy requirement of Article III, "contains three
elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
"[A] plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal
connection between the injury and the conduct complained of,' and (3) a
'likelihood' that the injury 'will be redressed by a favorable decision.'"
*Driehaus*, 134 S. Ct. at 2341 (quoting *Lujan*, 504 U.S. at 560-61)
(alteration omitted).

In general, the plaintiff has standing to enforce only his own
rights, rather than those of third parties not before the court. *E.g.*,
*Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968).  A limited exception to this

rule has been recognized where "enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Warth v. Seldin*, 422 U.S. 490, 510 (1975) (emphasis added); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989); *Singleton v. Wulff*, 428 U.S. 106, 112 (1976); *Norton v. Ashcroft*, 298 F.3d 547, 555 (6th Cir. 2002). But the litigant must have a sufficiently close relationship to the third party to be a "proper proponent" of that party's rights, and a "genuine obstacle" must prevent the third party from advancing its own rights. *Singleton*, 428 U.S. at 112, 115; *accord, e.g., Norton*, 298 F.3d at 555; *see also Powers v. Ohio*, 499 U.S. 400, 411 (1991).

To satisfy the injury-in-fact prong of the standing inquiry, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). It follows that a plaintiff who claims "only harm to his and every citizen's interest in proper application of the Constitution and laws" does not have standing to sue. *Lujan*, 504 U.S. at 573-74.

Furthermore, where a plaintiff seeks injunctive relief, "'past exposure'" to allegedly "'illegal conduct'" is not sufficient to show an injury-in-fact absent "'any continuing, present adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). An allegation of potential future injury, meanwhile, suffices only if "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Driehaus*, 134 S. Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013)). In particular, to establish standing to raise a pre-enforcement challenge, a plaintiff must show "'an intention to engage in a course of conduct'" that is "'arguably affected with a constitutional interest'" and "'proscribed by'" the law, as well as "'a credible threat of prosecution'" under the law. *Driehaus*, 134 S. Ct. at 2342 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

The requisite causal link between the injury and the challenged conduct is present for standing purposes if the injury "fairly can be traced to the challenged action." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976). It is "substantially more difficult" to make this showing where an alleged injury is indirect. *Allen v.*

*Wright*, 468 U.S. 737, 758 (1984) (quoting *Warth*, 422 U.S. at 505).  An

injury "produced by" the defendant's "determinative or coercive effect

upon" a third party suffices for standing—but an injury that results

from "the independent action of [a] third party" does not.  *Bennett v.

Spear*, 520 U.S. 154, 169 (1997) (internal quotation marks and

emphasis omitted).  An injury is also not fairly traceable to the

defendant's action if the plaintiffs "inflict[ ] harm on themselves based

on their fears of hypothetical future harm."  *Clapper*, 133 S. Ct. at 1151.

Finally, "a plaintiff satisfies the redressability requirement when he

shows that a favorable decision will relieve a discrete injury to himself."

*Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982).

　　"The party invoking federal jurisdiction"—here, each plaintiff—

"bears the burden of establishing" standing.  *Lujan*, 504 U.S. at 561.  To

carry that burden, "each element" of standing must be supported with

the same "manner and degree of evidence" as "any other matter on

which the plaintiff bears the burden of proof."  *Id.*  To withstand a

motion to dismiss, plaintiffs "must 'clearly * * * allege facts

demonstrating'" each element of standing (*Spokeo, Inc.*, 136 S. Ct. at

1547 (quoting *Warth*, 422 U.S. at 518)), and they must do so for each "of

the particular claims asserted'" (*Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (quoting *Allen*, 468 U.S. at 752) (emphasis omitted)).  The inquiry into whether plaintiffs have standing is "'especially rigorous'" where, as here, "'reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'"  *Clapper*, 133 S. Ct. at 1147 (quoting *Raines*, 521 U.S. at 819-20).

### B.    Plaintiffs lack standing to challenge the reporting provisions in FATCA or the FBAR

Plaintiffs do not have standing to bring their claims concerning the reporting provisions, because they do not allege (i) a violation of any legally protected interest related to those claims, (ii) account balances that exceed the threshold for the reporting provisions, or (iii) any injury-in-fact fairly traceable to those provisions.  Lacking such an injury, they cannot maintain suit.

### 1.    The reporting provisions do not invade any legally protected interest

Plaintiffs' challenges to the reporting provisions fall at the first hurdle.  They must, but do not, allege that the provisions invade "'a legally protected interest.'"  *Children's Healthcare Is a Legal Duty, Inc.*

*v. Deters*, 92 F.3d 1412, 1421 (6th Cir. 1996) (quoting *United States v. Hays*, 515 U.S. 737, 743 (1995)); *accord, e.g.*, *Lujan*, 504 U.S. at 560, 578; *White v. United States*, 601 F.3d 545, 555 (6th Cir. 2010). The complaint alleges that the provisions invade their "right to the privacy in their financial affairs." (Compl., RE 1, PageID #4.) That supposed right underpins both their Fourth Amendment claim, which seeks to characterize plaintiffs' account information as an "'intimate area[ ]'" of their affairs (Compl., RE 1, PageID #46), and their equal protection claim, which is premised on the view that the Government has "no legitimate interest" in learning that information (Compl., RE 1, PageID #42). And on appeal, plaintiffs rely on the same purported "constitutionally protected interest in not disclosing information they do not want to disclose." (Br. 47; *see also, e.g.*, Br. 5, 22-23, 25, 28-29.)

As the District Court correctly held (PI Order, RE 30, PageID #403-04; Op., RE 42, PageID #646), however, no such constitutionally protected right exists. In *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court made clear that there is no "legitimate expectation of privacy" in "the information kept in bank records." *Id.* at 442. This Court has repeatedly recognized as much. *See, e.g.*, *United States v.*

*Warshak*, 631 F.3d 266, 287 (6th Cir. 2010); *Guest v. Leis*, 255 F.3d 325, 335-36 (6th Cir. 2001); *United States v. Sturman*, 951 F.2d 1466, 1484 (6th Cir. 1991); *United States v. Bailey*, 628 F.2d 938, 941 (6th Cir. 1980).

The reasoning behind this rule is straightforward. The Court in *Miller* held that documents containing account information are "business records of" banks, not "'private papers'" of the account holder, who "voluntarily conveyed" the account information to the bank and bank employees. *Miller*, 425 U.S. at 441-42. In doing so, the account holder "takes the risk" that "the information will be conveyed" by the bank "to the Government." *Id.* at 443. As a result, there can be no legitimate expectation that the information will not be disclosed to the Government. *See also Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("no legitimate expectation of privacy in information" voluntarily turned over "to third parties"); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 574 (6th Cir. 2002) (no general constitutional right to nondisclosure of private information).

*Miller* applies here. The "private" information at issue is known by plaintiffs' financial institutions and their employees. Plaintiffs

accordingly have no constitutional right that would prevent transmission of the information.  As a result, the reporting provisions at issue do not "actually implicate[ ] the Constitution" (*White*, 601 F.3d at 555), and plaintiffs lack standing to raise their Fourth Amendment and equal protection claims.

Plaintiffs seek to elude this conclusion by arguing that *Miller*'s holding does not apply here.[8]  (Br. 31.)  That is not so.  Plaintiffs base their argument on footnote 6 of *Miller*, which suggests only that reporting requirements might raise First Amendment concerns if the requirements would disclose information such as an individual's associational ties and political activities.  *See Miller*, 425 U.S. at 446 n.6.  But plaintiffs do not raise any First Amendment concerns here.  Moreover, *Miller* makes clear that any such concerns do not attach to account information itself, but instead to a distinct class of information concerning the account holder's beliefs.  Plaintiffs do not, and cannot, allege that the reporting provisions at issue—which concern only basic

---

[8]  Plaintiffs also cite *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015).  (Br. 23, 36.)  But that case is inapposite, because it concerned an ordinance allowing the police to demand immediate access to information in which there was a reasonable expectation of privacy, and to do so without a warrant.  *See id.* at 2457.

information, such as the existence and balance of accounts and gains

and losses, needed to determine tax liability—threaten disclosure of

such information.  *See, e.g.*, *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21,

78-79 (1974) (Powell, J. concurring) (domestic reporting requirements of

the BSA, which require reports on all currency transactions above

$10,000, do not trigger First Amendment concerns).  Plaintiffs' attempt

to rely on the inapplicable footnote in *Miller* should therefore be

rejected.[9]

> **2.    The original complaint does not contain
> allegations sufficient to show that plaintiffs are
> subject to the reporting provisions**

Plaintiffs' attempt to challenge the reporting provisions also

suffers from a second general shortcoming.  Plaintiffs concede that they

have standing to challenge the reporting provisions only if they are

"subject to" those provisions.  (Br. 50-51.)  As the District Court held,

however (PI Order, RE 30, PageID #396), the complaint does not

---

[9]  Plaintiffs also argue at length that the reporting of bank account
information raises digital security concerns, particularly when the
information passes through the hands of another government.  (*See* Br.
22-23, 32-36.)  That argument has no basis in *Miller*.  It is also
irrelevant, because the complaint does not contain either the factual
allegations underpinning this argument or any attempt to seek
standing on the basis of security concerns.

contain factual allegations that, if true, would demonstrate as much.
The challenged provisions of FATCA and the intergovernmental
agreements do not require reporting of U.S. citizens' accounts unless
they have either $50,000 or—as to individual reporting if they live
abroad full-time—$200,000 in foreign financial assets, and individuals
must file the FBAR only if they have a foreign bank account with a
balance that exceeds $10,000.  (*See supra* pp. 3-4, 9.)  The original
complaint, however, fails to allege that any of the plaintiffs has, or ever
intends to have, assets that exceed these thresholds.[10]

Plaintiffs' challenges to the reporting provisions therefore are not
being advanced to vindicate their own supposed privacy rights.  Rather,
those challenges are, at most, ones to vindicate the alleged
constitutional rights of third parties subject to FATCA and the FBAR.
But despite their repeated contentions that the challenged provisions
have harmed others (*e.g.*, Br. 1, 25-26, 42, 44), plaintiffs disavow any
attempt to sue on behalf of third parties (Br. 24, 46-47), and they lack

---

[10] As discussed below (at 59-69), the District Court correctly held
that the proposed amended complaint cures this single factual infirmity
as to the FBAR but does not establish that plaintiffs have standing to
raise any of the claims at issue.

standing at all events to do so.  Even assuming, *arguendo*, that the
Fourth Amendment applies to the provisions at issue, "it would be
unprecedented for this [C]ourt to find standing for plaintiffs to litigate a
Fourth Amendment cause of action without any evidence that the
plaintiffs themselves have been subjected to" an allegedly illegal search.
*ACLU v. NSA*, 493 F.3d 644, 673-74 (6th Cir. 2007) (opinion of
Batchelder, J.) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).
Moreover, to base either their Fourth Amendment claim or their equal
protection claim on the rights of third parties, plaintiffs would also have
to allege they have "a close relation with" those third parties also
injured and that "some hindrance" prevented those individuals from
filing suit themselves.  *Norton*, 298 F.3d at 555.  "Plaintiffs do not allege
any facts" on either score, with the result that they "lack standing" to
vindicate the rights of third parties subject to the reporting provisions.
*Id.*; *see also Alsheikh v. Lew*, N.D. Cal. No. 3:15-cv-3601, Dkt. 45 (Aug.
22, 2016) (attached as Addendum B) (no standing to challenge FATCA
absent allegations that account balances exceed reporting thresholds).

### 3.   Plaintiffs have alleged no injury-in-fact traceable to the challenged reporting provisions

Contrary to plaintiffs' argument on appeal (Br. 38), even if they could overcome these categorical obstacles, it would not automatically follow that they have standing.  Rather, plaintiffs would still have to satisfy Article III by alleging an injury-in-fact traceable to the reporting provisions.  *E.g.*, *Lujan*, 504 U.S. at 560.  They have not done so.

### a.   The FBAR

The only supposed "injury" that plaintiffs allege from the use of FinCEN Form 114 for the FBAR is that they, and several of their family members, "do not want" their account details "disclosed to the United States government."  (Compl., RE 1, PageID #12, 15, 17, 23, 27; *see also* PageID #20.)  That allegation is insufficient.  Plaintiffs' disagreement with the FBAR, even if that disagreement is based on their reading of the Constitution, cannot give rise to standing, because "'harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws * * * does not state an Article III case or controversy.'"  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (quoting *Lujan*, 544 U.S. at 573-74).  And the possibility that the FBAR makes plaintiffs uncomfortable does not change that conclusion,

because "general emotional 'harm,' no matter how deeply felt," is not an injury-in-fact. *Humane Soc'y v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995); *accord, e.g.*, *Hollingsworth*, 133 S. Ct. at 2663. Whether plaintiffs' views about the FBAR are characterized as "discomfort" (PI Order, RE 30, PageID #396) or "strong objections" (Br. 29), those views do not constitute a "concrete, particularized harm that confers standing to sue" (PI Order, RE 30, PageID #396).

### b. The individual reporting requirements of FATCA

Plaintiffs also state no cognizable injury caused by the individual reporting requirements of FATCA. Plaintiffs' chief allegation concerning these requirements amounts to the same generalized, non-justiciable disagreement they express with regard to the FBAR. The only two other allegations that conceivably relate to the individual reporting requirements fare no better. Kish, for example, alleges that "FATCA has at time caused some discord" with his wife. (Compl., RE 1, PageID #17.) But as the District Court held (PI Order, RE 30, PageID #398), disagreement with one's spouse about a government policy is not a concrete injury on which a federal lawsuit may be based.

Johnson, meanwhile, alleges that he "and his wife decided to legally separate all of their jointly owned assets" in order "to protect his wife's privacy," with the result that he no longer has an ownership interest in his home or various other assets. (Compl., RE 1, PageID #15.) This allegation expressly seeks to vindicate the supposed privacy rights of a third party—Johnson's wife. And again, the complaint makes no attempt to allege that Johnson satisfied the prerequisites to third-party standing. *Norton*, 298 F.3d at 555.

Furthermore, any harm Johnson suffered from the separation of assets is not traceable to FATCA. It is undisputed that, as the District Court held, nothing in the statute compelled the Johnsons to take that course, and they "are free to reverse" their separation of assets "at any time, regardless of FATCA." (PI Order, RE 30, PageID #397.) Instead, the Johnsons decided to separate their assets on the basis of their erroneous belief that FATCA invades a constitutionally protected privacy interest. (Compl., RE 1, PageID #15.) Any injury Johnson suffered therefore results from voluntary action taken to protect a non-existent right. But such a self-inflicted injury cannot give rise to standing to challenge FATCA's individual reporting requirements. *See,*

-43-

*e.g.*, *Clapper*, 133 S. Ct. at 1151; *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015); *Campeau v. Soc. Sec. Admin.*, 575 F. App'x 35, 38 (3d Cir. 2014).

### c.    The institutional reporting provisions of FATCA and the intergovernmental agreements

Plaintiffs' attempts to allege an injury-in-fact traceable to the institutional reporting provisions for foreign financial institutions contained in FATCA and the intergovernmental agreements fare no better.  Insofar as plaintiffs object to the banks' reporting of their information under FATCA or the agreements, they have stated a non-justiciable generalized grievance (*see supra* pp. 40-41).  Nelson's allegation that she "resents" FATCA-related inquiries from her bank (Compl., RE 1, PageID #23), simply restates that generalized grievance. So, too, does Zell's objection (Compl., RE 1, PageID #27) to his bank's inquiries.

Three other allegations of harm founder on the rule that a past injury cannot give rise to standing to pursue injunctive relief unless it gives rise to "continuing, present adverse effects."  *Lyons*, 461 U.S. at 102.  Crawford alleges that his own firm turned him down for a

brokerage account in 2012 (Compl., RE 1, PageID #12), but he alleges

no ongoing injury as a result of that denial.[11]  Similarly, although

Kuettel complains that he had difficulty refinancing his mortgage, he

concedes that he has now completed that process (Compl., RE 1, PageID

#19) and that his alleged banking problems have "disappeared" (Br. 42).

And Nelson's past "fear" that her bank account would be closed "if she

had not renounced her U.S. citizenship" (PI Order, RE 30, PageID #400)

also states, at most, a past injury without any continuing effect.[12]

Two further sets of allegations concern claims of harm to third

parties rather than injury to the plaintiffs themselves.  Kuettel alleges

---

[11]  The District Court read Crawford's allegation that he suffered financial harm as relating to Saxo's denial of his application.  (PI Order, RE 30, PageID #396.)  If that reading is correct, the denial does not establish standing because Crawford's alleged financial injury is not fairly traceable to FATCA.  (*See infra* pp. 46-47.)

[12]  Plaintiffs have never argued that the renunciation of citizenship itself represents an ongoing injury to Kuettel or Nelson and have accordingly waived that "theory of standing." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1021 (7th Cir. 2016).  In any event, any injury from renunciation is not traceable to FATCA. Nelson, who alleges no facts to substantiate the fear that her account would be closed, renounced citizenship on the basis of "hypothetical future harm that [was] not certainly impending." *Clapper*, 133 S. Ct. at 1151.  And insofar as the banks with which Nelson and Kuettel dealt chose not to serve U.S. citizens, the requisite causal link is absent because that choice is an independent business decision not mandated by FATCA.  (*See infra* pp. 46-47.)

that banks in Switzerland will give his daughter less advantageous financial terms because she does not have a bank account in her own name (Compl., RE 1, PageID #19), and Zell alleges that his clients have suffered various indignities at the hands of Israeli banks (Compl., RE 1, PageID #25-27).  But neither Kuettel nor Zell alleges any *personal* injury from these actions of financial institutions.[13]  And a plaintiff who has not suffered any injury may not sue to vindicate the rights of a third party.  *E.g.*, *Caplin*, 491 U.S. at 623 n.3 (citing *Singleton*, 428 U.S. at 112); *Warth*, 422 U.S. at 510; *Norton*, 298 F.3d at 555.

That leaves the claims by Crawford and Zell that they have lost business and, therefore, money.  Crawford alleges that he has suffered financial harm because Saxo Bank's policy of rejecting U.S. citizens, which it allegedly adopted "in part" because of FATCA, means that his brokerage firm has turned away potential U.S. clients.  (Compl., RE 1, PageID #11-12.)  But even if Crawford's harm is ongoing—a question the complaint elides (*see id.*)—any suit to redress that harm would rest

---

[13]  In particular, Zell's allegations that banks invaded the attorney-client privilege do not state an injury to him, because the privilege belongs to the client alone.  *See, e.g.*, *United States v. Hatcher*, 323 F.3d 666, 675 n.2 (8th Cir. 2003); *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1216 n.11 (6th Cir. 1985).

on "'the legal rights or interests of third parties.'" *Allstate Ins. Co. v. Wayne Cnty.*, 760 F.2d 689, 693 (6th Cir. 1985) (quoting *Warth*, 422 U.S. at 499). Crawford's claim is that Saxo, a third-party bank, adopted its policy to avoid making reports about potential third-party customers. And as with Johnson, the complaint makes no effort to allege that Crawford satisfies the requirements for third-party standing. *Norton*, 298 F.3d at 555.

In addition, as the District Court correctly held (PI Order, RE 30, PageID #396; Op., RE 42, PageID #643-44), Crawford's alleged loss of business is not fairly traceable to the challenged provisions of FATCA because it results from the independent actions of third parties. FATCA does not require Saxo to decline U.S. clients or coerce it into doing so. To the contrary, "[i]t was in the discretion of" Saxo to make that choice. *Ammex, Inc. v. United States*, 367 F.3d 530, 534 (6th Cir. 2004). The result is that Crawford's alleged loss of business is not traceable to the Government. *Id.* (customer lacked standing to challenge excise tax imposed on, and voluntarily passed on by, supplier); *accord, e.g.*, *Eastern Kentucky*, 426 U.S. at 41-42 (hospitals' refusal to provide non-emergency services to indigent patients not

caused by IRS Revenue Ruling that gave favorable tax treatment to hospitals providing only emergency services).

Furthermore, contrary to plaintiffs' argument (Br. 41-44), Crawford's proffered causal chain is speculative and murky. He alleges that Saxo's policy is only "in part" due to FATCA and in part due to other, unspecified factors. (Compl., RE 1, PageID #12.) That allegation means, at most, that FATCA "encouraged" Saxo's action. *Eastern Kentucky*, 426 U.S. at 42. But "it does not follow" that Saxo's policy "in fact results from" FATCA. *Id.* And even if the policy were caused by FATCA, it would not follow that Crawford's harm was traceable to the statute, because the complaint is silent as to why Crawford's firm does not work with a bank that does accept U.S. clients. Any link between Crawford's injury and FATCA therefore depends on speculation concerning both Saxo's actions and the actions of Crawford's firm and is "not suffic[ient] to invoke the federal judicial power." *Eastern Kentucky*, 426 U.S. at 44; *accord, e.g., Allen*, 468 U.S. at 758; *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478-79 (D.C. Cir. 2009).

Zell's allegation of lost business fails for the same reasons. Zell alleges that he has lost non-U.S. clients, and thus money, after banks

asked his clients for financial information because Zell, a U.S. citizen, acted as a trustee or fiduciary for the clients' accounts. (Compl., RE 1, PageID #25-26.) Again, even assuming that allegation states a continuing rather than a past harm, it seeks to vindicate the privacy rights of the third-party clients without any showing that Zell is entitled to do so. Moreover, the banks were acting independently. Nothing in FATCA requires non-U.S. persons to provide information simply because a U.S. person acts as a trustee or fiduciary. And although the intergovernmental agreement with Israel does contain that requirement (Israeli IGA Art 1, § 1(cc) & (mm); *id.* Art. 2, § 2(a)(1)), the agreement cannot be the cause of Zell's previous loss of clients, because it is not yet in force (*see supra* p. 7).[14] Zell, like the other plaintiffs, would therefore lack standing to challenge the institutional reporting provisions of FATCA and the intergovernmental agreements even if the complaint alleged both the violation of a legally protected interest and that plaintiffs are subject to the challenged provisions.

---

[14] Nor, by the same token, can any alleged injury be traced to Article 5 of the agreement with Switzerland, which is not in effect. (*See supra* pp. 8-9.)

-49-

## C.    Plaintiffs lack standing to raise their Eighth Amendment claims

Contrary to plaintiffs' argument (Br. 52), "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient" for standing.  *NRA v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (internal quotation marks omitted).  And the complaint fails to allege facts that would allow plaintiffs to challenge either the withholding tax pursuant to FATCA or the willful FBAR penalty as an "excessive fine" under the Eighth Amendment.

### 1.    Plaintiffs must, but do not, satisfy the prerequisites to maintaining a pre-enforcement challenge

Plaintiffs do not allege that they have ever been subjected to a willful FBAR penalty[15] or the withholding tax pursuant to FATCA or that any financial institution has been subject to the FATCA withholding tax.  Instead, they seek to base their Eighth Amendment claims on the possible future application of the FATCA withholding tax or FBAR penalty.  (Compl., RE 1, PageID #12, 15-17, 19-20, 23, 27).  Those claims, accordingly, are pre-enforcement challenges, meaning

---

[15]  Tellingly, plaintiffs acknowledge that there is a lesser penalty (not exceeding $10,000 and subject to a "reasonable cause" defense) for nonwillful FBAR violations.  *See* 31 U.S.C. § 5321(a)(5)(A).

that plaintiffs must allege (i) "'an intention to engage in a course of conduct'" proscribed by law that is (ii) "'arguably affected with a constitutional interest'" as well as (iii) "'a credible threat of prosecution.'" *Driehaus*, 134 S. Ct. at 2342 (quoting *Babbitt*, 442 U.S. at 298).

The complaint does not satisfy any of these criteria.[16]  As an initial matter, the course of conduct that would give rise to the FATCA withholding tax or FBAR penalty—failing to provide required information—would be "arguably affected with a constitutional interest" only if plaintiffs arguably had a right to the privacy of their account information.  As shown above (at 33-37), the Supreme Court has held that no such right exists.  This Court need go no further to hold that plaintiffs lack standing to raise pre-enforcement Eighth Amendment claims.

Plaintiffs also fail to satisfy the other prongs of the *Driehaus* inquiry.  The complaint contains no allegation that any financial

---

[16]  Even if it did, plaintiffs would lack standing.  Their allegations of injury do not state cognizable harms traceable to the FATCA withholding tax or FBAR penalty for the same reasons those allegations do not state cognizable harms traceable to the reporting provisions.

institution has not satisfied, or has no intention of satisfying, FATCA

reporting provisions.  Similarly, plaintiffs do not allege that they have

failed to file a required FBAR.  And although plaintiffs allege that they

"fear" application of the willful FBAR penalty *if* they choose not "to file

an FBAR" at some undefined point in the future (Compl., RE 1, PageID

#12, 16-17, 20, 23, 27), they never allege any intention of doing so.[17]

Zell alone alleges that he has refused FATCA-related information

requests from his bank.  (Compl., RE 1, PageID #27.)  But Zell has

made no attempt to allege a realistic expectation that he will be subject

to the FATCA withholding tax as a result of his non-compliance.  Zell

does not claim that he or his financial institution has been subjected to,

threatened with, or even contacted about the withholding tax.  And Zell

cannot allege a cognizable expectation that the withholding tax will be

imposed against him, because the Secretary has "disavowed any

intention of invoking" it (*Babbitt*, 442 U.S. at 302) against U.S. account

holders in Israeli financial institutions at this time (*see* IRS

---

[17] Kuettel also alleges that he would not file an FBAR for his daughter's account if he transferred the account to her, but the complaint makes clear that he has no intention of transferring the account.  (Compl., RE 1, PageID #19-20.)

Announcement 2014-38, http://www.irs.gov/irb/2014-51_IRB/ ar09.html#d0e479).[18]  Any fear Zell has about the FATCA withholding tax is therefore not "reasonably founded in fact."  *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987).

> ### 2.  Plaintiffs may not seek to vindicate the Eighth Amendment rights of third-party foreign financial institutions

Plaintiffs also lack standing to challenge the withholding tax that may be imposed pursuant to FATCA against non-complying foreign financial institutions for an additional reason.  As the District Court recognized, none of the plaintiffs in this case is a foreign financial institution.  (PI Order, RE 30, PageID #395.)  Plaintiffs' challenge to the withholding tax against such institutions therefore necessarily seeks to vindicate the *institutions'* Eighth Amendment rights.  But plaintiffs may not do so, because Eighth Amendment rights are personal rights

---

[18]  Even after the intergovernmental agreement enters into force, the withholding tax will remain suspended in most cases (Israeli IGA, Art. 4, § 2), and Zell provides no reason to believe the tax will be applied to him.  Moreover, plaintiffs' argument that the disavowal of enforcement does "not eliminate standing" (Br. 52) is inconsistent with governing case law.  *See, e.g.*, *McKay v. Federspiel*, 823 F.3d 862, 869-70 (6th Cir. 2016)).  Nor is it supported by *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) (Br. 52), which has nothing to do with standing.

that may not be vicariously raised.[19]  *See, e.g.*, *Massey v. Helman*, 196 F.3d 727, 740 (7th Cir. 1999).

Furthermore, plaintiffs have once again failed to allege an entitlement to bring a suit to vindicate third-party rights.  They must allege an injury from the institutional withholding tax, but they do not.  *E.g.*, *Caplin*, 491 U.S. at 623 n.3; *Warth*, 422 U.S. at 510.  In particular, and contrary to plaintiffs' argument on appeal (Br. 38-39), the plaintiffs whose alleged injuries stem from the conduct of third-party banks seek to implicate the reporting provisions of FATCA, not the withholding tax. (Compl., RE 1, PageID #12, 23-26.)  And the unadorned allegation that banks "likely would not comply with FATCA" absent the tax (Compl., RE 1, PageID #44; Br. 39) constitutes speculation that cannot give rise to standing.  *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (stating that, for standing purposes, courts "'assume that [actors] will conduct their activities within the law'") (quoting *O'Shea*, 414 U.S. at 497).

---

[19]  A third party may raise a challenge under the Excessive Fines Clause if it has an interest in specific property that is being forfeited to the Government.  *See, e.g.*, *United States v. Cochenour*, 441 F.3d 599, 601 (8th Cir. 2006).  Plaintiffs, however, do not allege that they hold any such interest in relevant assets of any foreign financial institution.

-54-

In any event, plaintiffs have not alleged either a sufficiently close relationship with the banks to be effective advocates of those rights or that the banks themselves face an obstacle to suit. *Norton*, 298 F.3d at 555. In fact, plaintiffs cannot be effective advocates of the banks' Eighth Amendment rights with respect to the FATCA withholding tax due to an inherent conflict that exists between their respective interests. Because the tax could apply only if a bank followed plaintiffs' preferred course of action by failing to report information under FATCA, plaintiffs' own purported privacy interest is adverse to the banks' interest in avoiding the allegedly excessive tax.

**D.    Plaintiffs lack standing to claim that the intergovernmental agreements exceed Executive authority**

**1.    The plaintiffs suing in their individual capacity lack standing to challenge the agreements**

Plaintiffs' final claims allege that the intergovernmental agreements exceed the constitutional power of the Executive Branch and contravene FATCA. (Compl., RE 1, PageID #37-40.) Plaintiffs, however, have alleged no injury-in-fact traceable to these alleged violations. The bare allegations of a constitutional violation and of inconsistency between the agreements and FATCA cannot give rise to

standing, because they represent non-justiciable generalized grievances premised on "harm to * * * every citizen's interest in proper application of the Constitution and laws." *Lujan*, 504 U.S. at 574; *accord, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 440 (2007). Furthermore, contrary to plaintiffs' contention on appeal (*e.g.*, Br. 51), none of their other allegations concerning standing even attempts to allege an injury from any challenged provision of the agreements—much less any provision of the agreements that plaintiffs allege is inconsistent with FATCA. And to the extent that plaintiffs' claims of injury are relevant to the agreements, they would not establish standing for the reasons explained above (at 41-48).

In addition, even if successful, plaintiffs' challenge to the agreements could give them no meaningful relief. The agreements themselves simply facilitate the implementation of FATCA and, in doing so, impose obligations on foreign governments rather than on financial institutions or individuals. Furthermore, to the extent that plaintiffs' claims concerning the FATCA reporting provisions and withholding tax fail, all of the rules to which plaintiffs object would remain good law irrespective of the fate of plaintiffs' separate challenge

to the intergovernmental agreements.  Far from presenting a case or

controversy, then, plaintiffs have only an academic interest in the

counts challenging the intergovernmental agreements in their entirety.

> **2.    Senator Paul may not challenge the intergovernmental agreements in his official capacity**

Senator Rand Paul, who claims standing in his official capacity,

also may not raise the claims concerning the constitutionality of the

intergovernmental agreements.  Senator Paul's alleged injury is that he

was "denied the opportunity" to vote against the intergovernmental

agreements.  (Compl., RE 1, PageID #13; *accord* Br. 47.)  In *Raines v.

Byrd*, 521 U.S. 811 (1997), however, the Supreme Court "held that six

individual members of Congress" could not challenge the Line Item Veto

Act on the ground that the Act had "allegedly diluted the efficacy of

[their] votes." *Ariz. State Legislature v. Ariz. Indep. Redistricting

Comm'n*, 135 S. Ct. 2652, 2664 (2015) (emphasis omitted).   The

legislators had claimed that the Act "alter[ed] the legal and practical

effect of" their votes and "divest[ed]" them of "their constitutional role"

in the legislative process. *Raines*, 521 U.S. at 816.  The Court held that,

rather than stating a concrete personal injury, these allegations

amounted to a claim of "institutional injury" that "runs * * * with [their] seat[s]" in Congress. *Id.* at 821. As a result, the Court held, "individual members of Congress" lack "a sufficient 'personal stake'" to satisfy Article III where they allege only an abstract diminution of their voting power. *Id.* at 829; *accord, e.g.*, *Kerr v. Hickenlooper*, 2016 WL 3126203, at *4 (10th Cir. June 3, 2016); *Baird v. Norton*, 266 F.3d 408 (6th Cir. 2001).

That holding bars Senator Paul from challenging the intergovernmental agreements. Like the plaintiffs in *Raines*, he is an individual member of Congress claiming that he was denied the institutional power of his vote. And like the plaintiffs in *Raines*, Senator Paul has "no personal right" to that vote. *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126 (2011). He therefore cannot claim standing by alleging that he was denied its effective use.

That conclusion is not, as plaintiffs contend (Br. 48), altered by the fact that this case involves a challenge to executive action, rather than a statute. The shortcoming in Senator Paul's claim to standing— *i.e.*, that he complains of a diffuse institutional harm—does not depend on whether the action he wishes to challenge is legislative or executive.

As the D.C. Circuit put the matter, because, under *Raines*, "a statute that allegedly divests congressmen of their constitutional role in the legislative process does not give them standing to sue," it follows that individual congressmen also lack standing to challenge executive action "that allegedly deprives [them] of their right to participate and vote on legislation in a manner defined by the Constitution." *Chenoweth*, 181 F.3d at 115 (internal quotation marks and alteration omitted); *accord Campbell v. Clinton*, 203 F.3d 19, 22-23 (D.C. Cir. 2000).

Plaintiffs' other attempts to distinguish *Raines* are equally unavailing.  Even assuming that a group of legislators with votes sufficient to pass or defeat a measure would have standing to redress institutional harms (*see Coleman v. Miller*, 307 U.S. 433 (1939) (Br. 48)), individual legislators may not do so (*see Baird*, 266 F.3d at 413-14).  Furthermore, although *Raines* suggests that individual legislators might be able to bring suit against any action that has an "effect on th[e] process" by which "a majority of Senators and Congressmen can pass or reject" legislation (521 U.S. at 819 (quoted at Br. 48)), the

intergovernmental agreements have no such effect.[20]  And this Court

may not accept plaintiffs' invitation (Br. 49 n.24) to overrule *Raines*.

## II

### The District Court correctly held that the proposed amended complaint would also be subject to dismissal on standing grounds

### Standard of review

This Court "review[s] *de novo* the denial of a motion for leave to

amend on the grounds that the amended pleading would not survive a

motion to dismiss."  *Haines*, 814 F.3d at 430.

### A.    The new allegations concerning the named plaintiffs do not cure the deficiencies in the original complaint

Under Fed. R. Civ. P. 15(a)(2), district courts "should freely give

leave [to amend] when justice so requires."  Nevertheless, "'[a] motion to

amend a complaint should be denied if,'" *inter alia*, the amendment

"'would be futile.'"  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010)

(quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)); *accord,*

*e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A proposed amendment

---

[20] Exceptions to *Raines* may also exist where an individual legislator has been singled out for "specially unfavorable" treatment or is authorized to sue on behalf of an entire house of Congress.  *See Raines*, 521 U.S. at 821, 829.  But neither circumstance is presented here.

is futile if the amendment "would not survive a motion to dismiss."

*Thiokol Corp. v. Dep't of Treas., State of Mich., Revenue Div.*, 987 F.2d

376, 383 (6th Cir. 1993).  The District Court correctly concluded that

plaintiffs' motion to amend was futile because the proposed complaint

did not remedy the deficiencies in plaintiffs' attempts to allege

standing.[21]

### 1.    The reporting provisions

The proposed complaint does not establish that any plaintiff has

standing to challenge the FBAR or the reporting provisions in FATCA

and the intergovernmental agreements.  That complaint includes only

one material change:  it alleges that Crawford, Johnson, Kish, Nelson,

and Zell—but not Kuettel—had account balances that exceeded the

threshold for FBAR reporting.  (Prop. Compl., RE 32-1, PageID #439,

---

[21]  Plaintiffs argue that a motion to amend should be denied on
futility grounds only if the amendment would be "obvious[ly] futil[e]."
(Br. 56.)  No such rule exists.  And although plaintiffs cite a district
court opinion expressing a *preference* for the procedure of granting a
motion to amend and then ruling on a renewed motion to dismiss (*id.*
(citing *Smith v. Robbins & Myers*, 2012 WL 5845072 (S.D. Ohio Nov. 19,
2012)), nothing prevented the District Court from instead issuing a
simultaneous ruling on the Government's motion to dismiss and
plaintiffs' motion to amend the complaint (*see, e.g.*, *U.S. ex rel. Sheldon
v. Kettering Health Network*, 816 F.3d 399 (6th Cir. 2016); *Seaton v.
TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013)).

443, 446, 449, 455, 461.)  But that does not mean that plaintiffs can challenge the requirement to report an account balance as part of the FBAR, because the complaint does not allege the invasion of any constitutional privacy right.  *See, e.g.*, *Miller*, 425 U.S. at 441-43; *Overstreet*, 305 F.3d at 574; *see also supra* pp. 33-37.

Nor does the proposed complaint allege any concrete injury even arguably traceable to the FBAR.  The proposed complaint adds boilerplate allegations stating that each plaintiff "suffers, and will continue to suffer, concrete and particularized injuries to legally protected interests, which injuries are caused by the challenged government actions and will be redressed by the requested relief." (Prop. Compl., RE 32-1, PageID # 440, 443, 447, 450; *see also* PageID #441.)  But this Court is "not compelled to accept" that alleged legal conclusion as true (*White*, 601 F.3d at 552), and parroting the elements of Article III standing does not "'clearly * * * allege facts demonstrating'" standing (*Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S. at 518)).

As to FATCA, the proposed complaint attempts to allege that Johnson and Zell are subject to the statutory reporting requirements for

individuals, but it is insufficient in both cases.  Johnson alleges that he is subject to "FATCA individual reporting" because the value of his accounts exceeds $75,000.  (Prop. Compl., RE 32-1, PageID #443.)  But because Johnson has lived abroad for more than 30 years (Prop. Compl., RE 32-1, PageID #441-42), he would be required to report under FATCA only if his assets exceed, at a minimum, $200,000 (Treas. Reg. § 1.6038D-2(a)).

Zell, meanwhile, alleges that he must report under FATCA because, in 2014, he had signatory authority over more than $200,000 in accounts.  (Prop. Compl., RE 32-1, PageID #461.)  But FATCA does not apply on the basis of signatory authority.  Rather, individual reporting under FATCA applies only if an individual would have to report "income, gains, losses, deductions, credits, gross proceeds, or distributions attributable to the" account on an annual income tax return.  Treas. Reg. § 1.6038D-2(b)(1).  And Zell does not allege that he has accounts in excess of the reporting threshold that satisfy this definition.[22]

---

[22]    The fact that Zell has signatory authority over the accounts would require Zell to file an FBAR with respect to the accounts.  31 C.F.R. § 1010.350(a).  But Zell does not even attempt to allege that

Furthermore, plaintiffs have failed to allege that FATCA invades a constitutionally protected interest, just as they have failed to allege that the FBAR reporting requirement does so.  And the proposed complaint, like the original complaint, does not state an injury-in-fact fairly traceable to either the individual or the institutional reporting provisions of FATCA.  In fact, the proposed complaint adds no new facts concerning Johnson or Zell—the only plaintiffs who attempt to allege that they are subject to required reporting under FATCA.  It also adds no details concerning Kish.  None of those plaintiffs has alleged cognizable harm traceable to FATCA for the reasons explained above (at 41-43, 45, 47-48).

As to the other plaintiffs, the proposed complaint's additions concerning Crawford confirm that Saxo Bank has *chosen* to turn away U.S. clients rather than being coerced into that step by FATCA or an intergovernmental agreement.  (Prop. Compl., RE 32-1, PageID #439.) Nor is standing conferred by the new details concerning Kuettel's

---

either he, or his clients, have suffered any injury from the need to file an FBAR with respect to these accounts.  In any event, Zell lacks standing to raise claims premised on an alleged invasion of his clients' supposed privacy rights.  (*See supra* p. 48.)

interactions with banks related to the refinancing of his mortgage (Prop. Compl., RE 32-1, PageID #448-49) or the allegation that Nelson knew others who had their bank accounts closed (Prop. Compl., RE 32-1, PageID #454). They concern claims of past injuries (*see supra* pp. 43-44), and any injury that Kuettel and Nelson suffered was, like Crawford's alleged financial harm, due to the independent actions of third-party banks (*see supra* pp. 45-47).[23]

### 2. The withholding tax pursuant to FATCA and the willful FBAR penalty

The proposed complaint also does not give any plaintiff standing to raise the Eighth Amendment claims in the complaint, because it does not satisfy the requirements for a pre-enforcement challenge. Plaintiffs do not allege a constitutionally protected interest. Rather, they again seek to rely on the nonexistent privacy right in their account information. Thus, although Zell repeats his allegation that he is not

---

[23] An email inquiry and response concerning an unidentified Dutch and U.S. citizen is attached as an exhibit to the proposed complaint. (Prop. Compl., RE 32-1, PageID #493.) That individual was removed from a Dutch pension plan even though, according to the response, FATCA does not apply to pension funds. (*Id.*) Contrary to plaintiffs' contention (Br. 42), the email cannot show that they have standing to challenge FATCA, because the individual in question is not a plaintiff, because plaintiffs have no connection to the Netherlands, and because the pension plan's actions have no basis in FATCA.

complying with FATCA and adds the allegation that he has not filed an FBAR (Prop. Compl., RE 32-1, PageID #461), those actions are not arguably affected with a constitutional interest.  Moreover, there is no credible threat that the FATCA withholding tax will be imposed against Zell for the reasons stated above (at 51-52), and the proposed complaint includes no allegation that the Government has ever sought to impose an FBAR penalty against Zell.

### 3.    The intergovernmental agreements

The proposed complaint seeks to challenge the intergovernmental agreements with France and Denmark as well as the agreements challenged by the original complaint.  But aside from Crawford's allegation that Saxo Bank is subject to the intergovernmental agreement with Denmark, which does not show that the agreement either required Saxo to reject U.S. clients or coerced it into doing so (Prop. Compl., RE 32-1, PageID #439), the proposed complaint contains no new allegations seeking to allege an injury from the intergovernmental agreements as opposed to FATCA.  Furthermore, as the District Court recognized (Op., RE 42, PageID #641), the only new allegation concerning Senator Paul rewords his claim that he has been

harmed because he was not able to vote on the agreements.  (Prop.

Compl., RE 32-1, PageID #440-41.)  As shown above (at 56-59), that

claim is not judicially cognizable.

### B.    None of the proposed plaintiffs has standing to raise the claims at issue

The proposed complaint also seeks to add three new plaintiffs—

Katerina Johnson, Lois Kuettel, and Richard Adams.  But they, too,

would lack standing to raise any of the claims at issue.  The new

plaintiffs advance the boilerplate allegations that the proposed

plaintiffs do not want to share the information, that they fear the

imposition of a willful FBAR penalty, and that parrot the elements of

standing.  (Prop. Compl., RE 32-1, PageID #444-45, 451-52, 457-58.)

But those allegations cannot give rise to standing for all of the reasons

set forth above (at 40-41, 61).

The allegations regarding the proposed plaintiffs are also

insufficient to confer standing to challenge the reporting provisions of

FATCA and the FBAR.  Katerina Johnson, Roger Johnson's wife,

alleges that "she should not have to disclose her private financial

information to the United States government."  (Prop. Compl., RE 32-1,

PageID #444.)  But as a "citizen of the Czech Republic," she is not

subject to either set of provisions.  (Prop. Compl., RE 32-1, PageID #443.)  Moreover, although Katerina Johnson alleges that she should not "have to separate" her assets from her husband's assets "to prevent that disclosure" (Prop. Compl., RE 32-1, PageID #444), she alleges no concrete injury from that separation, and any such injury still would not be traceable to the challenged provisions (*see supra* pp. 42-43).

Lois Kuettel, Daniel Kuettel's daughter, alleges that she wants to have an account that would exceed the $10,000 FBAR threshold transferred to her and that she would enjoy "advantages such as better interest rates" if the account were in her name.  (Prop. Compl., RE 32-1, PageID #451.)  But this alleged injury cannot be traced to the only challenged FBAR reporting requirement—*i.e.*, the reporting of account balances on FinCEN Form 114—because that requirement does not prevent Lois from having her own account.  Indeed, the proposed complaint makes clear that it is Lois's parents who have prevented the transfer and that they have done so out of the erroneous belief that the FBAR reporting requirement violates Lois's constitutional rights. (Prop. Compl., RE 32-1, PageID #451-52.)  Any injury Lois has suffered is therefore traceable to her parents, not the reporting requirement.

Moreover, like her parents, Lois may not bring a pre-enforcement challenge to the willful FBAR penalty, because she has not alleged either an actual constitutional right arguably affected by the FBAR or an imminent intention not to file a required report.

Lois Kuettel also alleges that "most banks" would not open an account in her name.  (Prop. Compl., RE 32-1, PageID #452.)  But it is difficult to see how this allegation can state an injury in light of her concession that other banks would offer her *better* terms if the account were in her name.  (*Id.*)  In any event, the balance in the account at issue would not make it subject to required reporting under FATCA, and any harm that Lois suffered from the bank's policy would not be traceable to FATCA because the statute does not compel her bank to turn down U.S. clients.  (*See supra* pp. 45-47.)

Finally, Richard Adams alleges that he is subject to the FBAR reporting requirement (Prop. Compl., RE 32-1, PageID #457), but he alleges no injury resulting from that requirement.  Conversely, Adams alleges that FATCA "poses a risk to" his desire to maintain a joint account with his wife (Prop. Compl., RE 32-1, PageID #457), but he does not claim that his account is subject to required reporting under

FATCA.  Even if it were, Adams alleges no facts suggesting that his bank has even considered closing the account and therefore has not shown a "substantial risk" that this alleged harm will occur.  *E.g.*, *Clapper*, 133 S. Ct. at 1150 n.5.  The consequential injuries that Adams supposedly fears, such as "difficulty opening" a new account and problems flowing from not having an account at all (Prop. Compl., RE 32-1, PageID #457), are even more speculative, because they rest on the decision processes of unnamed third-party financial institutions.  Finally, even if there were a significant risk that Adams's account would be closed, that risk would trace to policies voluntarily adopted by his banks, not to FATCA or the intergovernmental agreement with Switzerland.

In sum, neither the original complaint nor the proposed amended complaint contains allegations that, if proven, would show that plaintiffs have standing to raise any of the claims at issue.[24]

---

[24]  As noted above (*see supra* p. 24 n.7,), if this Court were to conclude that any plaintiff has standing, a remand would be necessary to allow the District Court to consider the other grounds for dismissal advanced by the Government but not reached by the court.

# CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Principal Deputy Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

/s/Richard Caldarone

GILBERT S. ROTHENBERG    (202) 514-3361
TERESA E. MCLAUGHLIN    (202) 514-4342
RICHARD CALDARONE    (202) 514-2947
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*

BENJAMIN C. GLASSMAN
  *Acting United States Attorney*

AUGUST 2016

# ADDENDUM A

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Verified Complaint for Declaratory and Injunctive Relief | 1-59 |
| 8 | Plaintiffs' Motion for Preliminary Injunction | 135-38 |
| 16 | Defendants' Response in Opposition to Motion for Preliminary Injunction | 196-252 |
| 26 | Defendants' Motion to Dismiss | 318-19 |
| 27 | Memorandum in Support of Motion to Dismiss | 320-54 |
| 30 | Entry and Order Denying Plaintiffs' Motion for Preliminary Injunction, ECF 8 | 382-418 |
| 32 | Plaintiffs' Motion for Leave to File Amended Verified Complaint for Declaratory and Injunctive Relief | 424-27 |
| 32-1 | [Proposed] Amended Verified Complaint for Declaratory and Injunctive Relief | 428-505 |
| 34 | Defendants' Response in Opposition to Motion for Leave to File Amended Verified Complaint | 509-29 |
| 35 | Plaintiffs' Reply Supporting Their Motion for Leave to Amend Complaint | 530-50 |

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 37 | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss | 554-89 |
| 38 | Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss | 590-614 |
| 42 | Entry and Order Denying Plaintiffs' Motion for Leave to File an Amended Verified Complaint (Doc. 32); Granting Defendants' Motion to Dismiss (Doc. 26) Plaintiffs' Complaint (Doc. 1); and Terminating Case | 628-54 |
| 43 | Clerk's Judgment | 655 |
| 44 | Plaintiffs' Notice of Appeal | 656-57 |

# ADDENDUM B

**Order granting motion to dismiss amended complaint in**
***Alsheikh v. Lew***, **N.D. Cal. No. 3:15-cv-3601, Dkt. 45**
**(Aug. 22, 2016)**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABDULLAH SALEH ALSHEIKH,

      Plaintiff,

    v.

JACOB LEW, et al.,

      Defendants.

Case No. 15-cv-03601-JST

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

Re: ECF No. 33

        Plaintiff Abdullah Saleh Alsheikh alleges that certain provisions of the Foreign Account Tax Compliance Act, 26 U.S.C. §§ 1471–74, are unconstitutional. The government moves to dismiss Plaintiff's Amended Compliant on several grounds, including standing. The Court previously granted the government's motion to dismiss Plaintiff's original complaint based on a lack of standing. Because the Court continues to conclude that Plaintiff lacks Article III standing, the Court will grant the government's motion and dismiss the Amended Complaint without leave to amend.

## I.    BACKGROUND

        "Congress passed the Foreign Accounts Tax Compliance Act ('FATCA') in 2010 to improve compliance with tax laws by U.S. taxpayers holding foreign accounts." Crawford v. United States Dep't of the Treasury, No. 15-cv-250, 2015 WL 5697552, at *1 (S.D. Ohio Sept. 29, 2015). "FATCA accomplishes this through two forms of reporting: (1) by foreign financial institutions (FFIs) about financial accounts held by U.S. taxpayers or foreign entities in which U.S. taxpayers hold a substantial ownership interest, 26 U.S.C. § 1471; and, (2) by U.S. taxpayers about their interests in certain foreign financial accounts and offshore assets. 26 U.S.C. § 6038D." Id.

        Plaintiff Abdullah Saleh Alsheikh is a U.S. citizen working abroad in the Kingdom of

Saudi Arabia. ECF No. 33 at 2. Plaintiff, proceeding pro se, filed a Complaint on August 6, 2015, seeking to invalidate certain provisions of FATCA on five grounds. ECF No. 1 at 4–13. According to Plaintiff, FATCA "threatens the privacy rights of United States Citizens who own foreign bank accounts, including American expats, by requiring banks to disclose priv[ate] information of the account owner without any chance for the citizen to object, and without any suspicion of wrong doing by the citizen." Id. at 1. Claim one alleges that FATCA violates the Tenth Amendment of the U.S. Constitution and cannot be justified under Congress' commerce or tax powers. Id. at 4–5. Claim two challenges FATCA on the basis that the information it requires foreign institutions to provide to the U.S. government constitutes an unlawful search under the Fourth Amendment. Id. at 7–8. Claims three through five seek to invalidate FATCA because the law allegedly violates Plaintiff's procedural due process, substantive due process, and equal protection rights. Id. at 8–13.

On April 7, 2016, the Court granted the government's motion to dismiss the original complaint, concluding that "Plaintiff has not identified any particular injury that he has suffered." ECF No. 31 at 4. On May 7, 2016, Plaintiff filed an Amended Complaint, which is nearly identical to the original complaint except for the addition of an approximately two page section entitled "Article III Standing." ECF No. 32 at 3–5. On May 24, 2016, the government moved to dismiss the Amended Complaint on several grounds, including a lack of Article III standing. ECF No. 33.

## II. LEGAL STANDARDS

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal citations omitted) (internal quotation marks omitted). An injury is "actual or imminent" if it is "certainly impending," because "[a]llegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of — the injury has to

be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)) (alterations in original). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 560–61 (internal citations omitted) (internal quotation marks omitted).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." Id. A "court's obligation to take a plaintiff at its word at that stage in connection with Article III standing issues is primarily directed at the injury in fact and causation issues, not redressability." Levine v. Vilsack, 587 F.3d 986, 996–97 (9th Cir. 2009) (citing Lujan, 504 U.S. at 561). "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Warth v. Seldin, 422 U.S. 490, 501–02 (1975).

## III. ANALYSIS

The government moves to dismiss Plaintiff's Amended Complaint on a number of grounds. ECF No. 33. Once again, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has not shown that he has Article III standing. The Court will therefore grant the government's motion on that basis, without reaching the government's remaining arguments.

### A. Article III Standing

The "injury in fact" element "requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563 (quoting Sierra Club v. Morton, 405 U.S. 727, 734 (1972)). The purpose of requiring direct injury is the judicial system's "rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome." Morton, 405 U.S. at 740. As a result, "a plaintiff raising only a generally available grievance about government—claiming only harm to

United States District Court
Northern District of California

his and every citizen's interest in proper application of the Constitution and laws, and seeking

relief that no more directly and tangibly benefits him than it does the public at large—does not

state an Article III case or controversy. " Lujan, 504 U.S. at 573–74.

The Court previously dismissed the original Complaint, stating:

> Plaintiff has not identified any particular injury that he has suffered.
> The Complaint contains only two sentences specifying how FATCA
> has allegedly harmed Plaintiff. First, Plaintiff alleges that he "is
> damaged since [FATCA] forces financial institutions in Saudi
> Arabia to disclose constitutionally protected information." ECF No.
> 1 at 2. Second, Plaintiff alleges that he has been injured in that he
> "is an American expat who is affected by [FATCA] since he has
> foreign bank accounts." ECF No. 1 at 4. However, Plaintiff does
> not allege any facts detailing whether any financial institution in
> Saudi Arabia, or otherwise, has, in fact, been required under
> FATCA to provide Plaintiff's financial information to the U.S.
> government. Moreover, as the government notes, "Plaintiff does not
> allege that he has had any application for an account denied or any
> account closed." ECF No. 21-1 at 9. As a result, Plaintiff has failed
> to allege that he "himself [is] among the injured." Lujan, 504 U.S.
> at 563.

ECF No. 31 at 4. The government argues that the Amended Complaint still fails to allege standing

because "[t]here is still no allegation that any financial institution has been required to provide any

of Plaintiff's bank account information to the United States government." ECF No. 33 at 3.

Moreover, the government argues, "merely stating the he owns accounts that *could be* subject to

reporting is insufficient." Id. (emphasis added).

The Court agrees with the government in this respect. While the Amended Complaint does

add the allegation that "Mr. Alsheikh owns bank accounts that *will* be [the] subject of reporting,"

ECF No. 32 at 3 (emphasis added), Plaintiff does not allege that any financial institutions have

been required to divulge his bank account information to the U.S. government. See also ECF No.

35 at 11 (Opposition brief, stating: "while no information was reported yet, the danger of reporting

is [im]minent."). Indeed, Mr. Alsheikh provides no factual allegations regarding his bank

accounts at all, making it impossible for the Court to plausibly infer, for instance, that his bank

account could potentially be subject to reporting because the "account . . . exceed[s] $50,000," as

required by the statute. 26 U.S.C. § 1471(d)(1)(B); ECF No. 33 at 3.[1]

---

[1] In this respect, Plaintiff's Opposition brief admits that he does not know whether or not any of

Additionally, the Amended Complaint does not sufficiently allege that the threatened harm is "imminent," as opposed to "conjectural or hypothetical." Lujan, 504 U.S. at 560–61. Although the Amended Complaint alleges that "Saudi Arabia has reached an agreement on substance to an Intergovernmental Agreement (IGA) to enforce FATCA," the Amended Complaint itself admits that the IGA has not yet been implemented, but rather that it "may be signed any time and will endanger the privacy of the plaintiff." ECF No. 32 at 4. Such allegations of "hypothetical" future harms do not satisfy Article III standing. Lujan, 504 U.S. at 560–61.

### CONCLUSION

Accordingly, the Court once again concludes that Plaintiff does not have Article III standing to pursue his claims. Because the Court previously gave Plaintiff an opportunity to amend his complaint to allege standing, and Plaintiff failed entirely to do so, the Court concludes that further amendment would be futile. As a result, the Court dismisses Plaintiff's Amended Complaint without leave to amend. Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1088 (9th Cir. 2002) ("Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment.").

IT IS SO ORDERED.

Dated: August 22, 2016

JON S. TIGAR
United States District Judge

his bank accounts would be subject to reporting: "account values continue to change and a plaintiff, any plaintiff may reasonably not know whether at the time of reporting set by the regulation, his bank account will be or will not be under this requirement . . . ." ECF No. 35 at 12.

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]  this brief contains <u>13,900</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]  this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook, *or*

[ ]  this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

<u>   /s/ Richard Caldarone   </u>

## CERTIFICATE OF SERVICE

It is hereby certified that on August 29, 2016, the foregoing brief for the appellees was electronically filed with the Clerk of the Court by using the ECF system.  Counsel for appellants are registered ECF users and will be served by the ECF system.

 /s/ Richard Caldarone    
RICHARD CALDARONE  
*Attorney*
