# No. 16-3539

### In the United States Court of Appeals
### for the Sixth Circuit

————————————

**Mark Crawford, Senator Rand Paul** in his official capacity
as a member of the United States Senate, **Roger Johnson, Daniel Kuettel,
Stephen J. Kish, Donna-Lane Nelson,** and **L. Marc Zell,**
*Plaintiffs-Appellants*

*v.*

**United States Department of the Treasury, United States Internal Revenue
Service,** and **United States Financial Crimes Enforcement Network,**
*Defendants-Appellees*.

————————————

On Appeal from the
United States District Court for the Southern District of Ohio

————————————

## Reply Brief of Plaintiffs-Appellants

————————————

James Bopp, Jr.
Richard E. Coleson
Courtney Turner Milbank
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807‒3510
Telephone: (812) 232‒2434
Facsimile: (812) 235-3685
E-mails: jboppjr@aol.com,
        rcoleson@bopplaw.com,
        cmilbank@bopplaw.com
*Counsel for Plaintiffs-Appellants*

# Table of Contents

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   I.   Plaintiffs Have Standing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.  Complaints Must Be Construed in Plaintiffs' Favor, Which Establishes
          Allegations of Ongoing Harm, Including Citizenship Loss.. . . . . . . . . 1

      B.  Plaintiffs Have Cognizable Interests, Including in Privacy (and Avoid-
          ing the Problems Flowing from Its Loss) Under the Conditions at
          Issue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.  Plaintiffs' Harms Are Fairly Traceable to Government Action, and
          Requested Relief Will Redress Those Harms.. . . . . . . . . . . . . . . . . . 14

      D.  The Harms Plaintiffs Experience Are Not Generalized Grievances... 20

      E.  The Harms Plaintiffs Assert Are Not Those of Third Parties.. . . . . . . 21

      F.  Senator Paul Has Standing to Challenge IGAs.. . . . . . . . . . . . . . . . . 22

      G.  Plaintiffs Have Standing for All Counts.. . . . . . . . . . . . . . . . . . . . . . 23

          1.  Count 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          2.  Count 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          3.  Count 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          4.  Count 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

          5.  Count 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

          6.  Count 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

          7.  Count 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

8. Count 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

II.    Plaintiffs Should Have Been Allowed to Amend the Complaint. . . . . . . . 28

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Compliance with Rule 32(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Exhibit A (Declaration of Plaintiff Kish). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# Table of Authorities

***Cases***

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bennett v. Spear*, 520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Coleman v. Miller*, 307 U.S. 433 (1939).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Davis v. FEC*, 554 U.S. 724 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016). . . . . 3

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) . . . . . . . . . . . . . 13

*Los Angeles v. Patel*, 135 S.Ct. 2443 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McConnell v. FEC*, 540 U.S. 93 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Natural Resources Defense Counsel v. U.S. Food and Drug Admin.*, 710 F.3d 71
    (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117 (2011).. . . . . . . . . . . 23

*Overstreet v. Lexington-Fayette Urban County Government*,
    305 F.3d 566 (6th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*Raines v. Byrd*, 521 U.S. 811 (1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Roe v. Wade*, 410 U.S. 113 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Maryland*, 442 U.S. 735 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Miller*, 425 U.S. 435 (1976). . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Warth v. Seldon*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

***Constitutions, Statutes, and Regulations***

26 C.F.R. 1.6038D-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26 U.S.C. 6038D .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27, 28

***Other Authorities***

Fed. R. Civ. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# Argument

## I. Plaintiffs Have Standing.

### A. Complaints Must Be Construed in Plaintiffs' Favor, Which Establishes Allegations of Ongoing Harm, Including Citizenship Loss.

Under Federal Rule of Civil Procedure 8(a), complaints need only provide a "short and plain statement" regarding jurisdiction and claims. To survive a motion to dismiss, a complaint needs only to contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). In the Amended Complaint,[1] Plaintiffs provide far more than these minimal requirements. And complaint allegations and challenges must be construed broadly and liberally, with the complaint considered as a whole and inferences credited to plaintiffs. (Appellants' Brief ("Br.") Part I.A.). The Government reads allegations in isolation, ignores plainly stated allegations, and ignores inferences favorable to Plaintiffs. Under the favorable-construction requirement, the Government's erro-

---

[1] The *proposed* Amended Complaint is hereafter simply called the Amended Complaint because amendment was denied based on lack of standing. Accordingly, all analysis must focus on the Amended Complaint. The Government's pre-then post-amendment analysis is erroneous, including its failure to credit and address amendments.

neous claims must be rejected.

For example, in the Government's statement of the first issue, it claims Plaintiffs "have not alleged that any of the challenged provisions . . . or the [IGAs] . . . cause them an ongoing or imminent injury-in-fact." (Appellees' Brief ("Opp'n") 2.) But the Amended Complaint adds explicit ongoing-injury allegations for each Plaintiff. (¶¶ 28, 34, 45, 55, 67, 76, 88, 103, 115, 133, RE32-1, PageID## 440, 441, 443, 445, 447, 450, 452, 456, 458, 462). The Government treats these assertions in isolation, as boilerplate allegations of the elements of standing (Opp'n 61), but they are not when considered (as they must be) in conjunction with other allegations that make them assertions with substance.

Another example is the Government's claim that Plaintiff Crawford "alleges no ongoing injury as a result of th[e] denial" by his own firm of a brokerage account. (Opp'n 44.) But it admits that "[t]he District Court read Crawford's allegation that he suffered financial harm as relating to Saxo's denial of his application" (Opp'n 44 n.11), which financial harm is ongoing. And it concedes that "Crawford alleges . . . that Saxo's policy has caused him economic harm, because it means his firm 'turn[s] away prospective American clients.'" (Opp'n 13 (citation omitted).) This is clearly ongoing economic harm. Moreover, Crawford plainly alleges that he "now suffers, and will continue to suffer" his injuries caused by challenged provisions and "is suffering irreparable harm," (Am.Compl. ¶¶ 28-29, RE32-1,

PageID# 440), so he does allege ongoing harm.[2]

Because complaints must be read as a whole (giving all favorable implications to plaintiffs), the verified harms recited by all Plaintiffs must be understood as part of the ongoing, increasing, worldwide harms caused by the challenged provisions and agreements as set out in the beginning of the Amended Complaint (*id.*, PageID## 428-436), from privacy loss (with all its attendant risks, including cybertheft and the harms flowing therefrom) to "all facets of individuals' lives from day-to-day finances and employment to family relations and citizenship" (*id.* ¶ 5, PageID# 431).[3] The cited Democrats Abroad study makes clear that the harms

---

[2] The Government argues that the Complaint is silent as to why Crawford's firm does not work with a bank that accepts U.S. clients. (Opp'n 47.) But the reasonable inference is that this is either not reasonably possible or would impose harm itself. The Government points to no suitable bank. Anyway, being forced to change banks—with the loss of a valued long-term working relationship—would itself be a harm traceable to challenged provisions/agreements.

[3] The Government argues that Plaintiffs never asserted loss of citizenship as a harm (Opp'n 44 n.12), but Plaintiffs clearly recited the loss of citizenship as a harm flowing from challenged provisions and agreements and then provided Plaintiffs who renounced citizenship on that very basis (Am.Compl. ¶¶ 5, 9, 69, 73-74 (Kuettel), 90, 96-97 (Nelson). So reading the complaint as a whole and giving implications to Plaintiffs, Plaintiffs made that claim. Anyway, Plaintiff Kish has now also renounced his citizenship due to challenged provisions/agreements, and recites the harm in his attached declaration (Exhibit A), so it is at issue. The Government's claimed authority for the notion that "Kuettel or Nelson . . . waived that 'theory of standing'" (Opp'n 44 n.12 (quoting *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1021 (7th Cir. 2016))), is inapplicable because "[o]n appeal" the *Hummel* plaintiffs "offer[ed] a new theory to support their standing to challenge the facilities for jurors [in an ADA action]," 817 F.3d at 1021, whereas here normal rules for construing complaints readily establish that Plaintiffs have consistently argued harm. Moreover, Plaintiffs' recited lists of harms that they suf-

to Americans overseas attributable to challenged provisions and agreements are widespread and ongoing, of which harms Plaintiffs are recipients as they verify. (*id.* ¶¶ 6-9, PageID## 431-435). And Defendants' Non-Prosecution Agreement with Swiss bank Zweiplus provides clear evidence that FFIs are actively dumping accounts of Americans abroad due to challenged provisions/IGAs. (Br. 26 n.7.) So Plaintiffs allege these problems as ongoing.

The Government contests asserted facts as if facts need not be accepted as true. An example illustrates this concerning Plaintiff Kuettel. First, the Government quotes the *original* Complaint, asserting that "Daniel Kuettel alleges that he 'relinquished his U.S. citizenship in 2012' after attempts to refinance his mortgage proved 'mostly unsuccessful.'" (Opp'n 14).) But the *Amended* Complaint *removes* that "mostly unsuccessful" language and clarifies that Kuettel's past mortgage harms were caused by FATCA, based on what he was told and experienced, and he was not successful in getting a mortgage until relinquishing his citizenship. (RE32-1, PageID## 448-49 (¶¶ 73-74).) Though a bank showed some early interest in refinancing his mortgage, that bank and other Swiss banks subsequently adopted policies of rejecting U.S. citizen accounts before the date when he needed

---

fer are framed as non-exclusive (Br. 27 ("one or more" with non-exclusive list), 49 ("at least")), renouncing citizenship is described as flowing from and a means to avoid listed harms (Br. 26), and Daniel Kuettel (Br. 10-11) and Nelson (Br. 14) describe their renunciation as a result of the other recited harms and a means of escaping them.

to refinance his mortgage. So there is no evidence that any bank was willing to refinance his mortgage, by the date when it needed to be done, if he were a U.S. citizen. But he was able to refinance shortly after renouncing his U.S. citizenship with a bank that would not do so before.

Second, in describing the Amended Complaint, the Government merely says that "Kuettel alleges that Swiss banks have a secret policy of not serving U.S. Citizens." (Opp'n 21.) This one-sentence statement describing the changes in the Amended Complaint ignores the removal of the "mostly unsuccessful" language on which the Government earlier relies. And the dismissive phrasing implies that such a claim is not credible, though the Democrats Abroad study shows such policies (Br. 26), a Non-Prosecution Agreement shows this specifically as to a Swiss bank (Br. 26 n.7), and multiple Plaintiffs verify personal problems (and recite knowledge of such problems for other U.S. persons) with getting such banking services as a result of FATCA/IGAs. The Government provides no evidence to show that the verified and recited problems of Americans abroad, including Plaintiffs, getting necessary financial services as a result of FATCA and IGAs are *not* true. They must be accepted as true.

Third, the Government says that the district court "held that Kuettel's difficulty in refinancing his mortgage constitutes a 'past harm' that *is not redressable in a suit seeking injunctive relief*." (Opp'n 16 (quoting PI Order, RE 30, PageID#

399) (emphasis added).) The district court did not say the italicized portion. Rather, it said past harm cannot give standing absent ongoing harm, which the court erroneously said Kuettel does not assert (PageID# 399). But he expressly asserts ongoing harm in the Amended Complaint (RE32-1, PageID# 450 (¶ 76)), and that harm is the ongoing inability to transfer funds to his daughter's college savings account without loss of the funds (*id.* PageID# 449-450 (¶ 75).[4]

Following are other examples of allegedly missing allegations that are not:

- The Government says Plaintiffs allege no harms from the IGAs. (Opp'n 54-55, 65.) But Plaintiffs cited specific harms therefrom (Br. 31-36), including loss of the increased security from direct reporting to IRS (without the involvement of third-party foreign governments) and the loss of FATCA's right to notice and consent in the required effort to obtain a waiver (Br. 36 n.16; Am.Compl. ¶ 169, RE32-1, PageID# 476).

- The Government says Plaintiffs do not challenge the FATCA penalty regard-

---

[4] The Government says that Kuettel says "he would not file an FBAR for his daughter's account if he transferred the account to her, but the complaint makes clear that he has no intention of transferring the account" (Opp'n 51 n.17), which is supposed to support the Government's argument that Plaintiffs do not allege an intention not to file an FBAR (Opp'n 51). Of course Plaintiffs that do not want to file an FBAR have standing to file a pre-enforcement challenge to the penalty that forces them to do so. And Kuettel does not want to transfer the account due to the FBAR penalty that would take from his daughter the money he would give her. (Am.Compl. ¶ 75, RE32-1, PageID# 449-450.) The Government's argument defies logic.

ing the individual reporting requirement. (Opp'n 3.) But Plaintiffs do challenge the individual reporting requirement (26 USC 6038D and 26 CFR 1.6038D-4) under Count 3 (equal protection). (Am.Compl. ¶¶ 175, 178, RE32-1, PageID## 477-478.)

- The Government says no plaintiff alleges being subject to FATCA or FBAR. (Opp'n 15, 38.) But the original Complaint said plaintiffs did not want account details disclosed and would not disclose but for FATCA and FBAR and that they fear unconstitutionally excessive fines, providing the reasonable inference that they *are* subject to them. The Amended Complaint clarified with information on triggering account balances for several Plaintiffs. (RE32-1 ¶¶ 25, 43, 64, 75, 83, 101, 112, 130, PageID## 439, 443, 446, 449-451, 455, 457, 461.)[5]

- The Government says that only Plaintiff Zell alleges an intention to violate the law, and his intention is restricted to FATCA. (Opp'n 27.) But Zell says he is also subject to FBAR reporting and is not complying with FBAR. (Am.Compl.

---

[5] The Government concedes that the Amended Complaint provides triggering information for FBAR reporting (Opp'n 60) but points to a recent regulation raising the FATCA reporting amounts and says Plaintiff Johnson does not meet the increased amount because he has lived abroad (triggering the higher threshold). (Opp'n 4, 38, 61-62.) The statute provides that if the aggregate value of an individual's "assets exceeds $50,000 (or such higher dollar amount as the Secretary may prescribe)" then that individual must report said assets on their individual tax return. 26 USC 6038D. While the secretary has recently increased the triggering amount for individuals living abroad, the threshold could be lowered to the statutory required minimum at any time, thus triggering reporting for Plaintiffs. So the issue of FATCA reporting should be decided.

¶ 130, RE32-1, PageID# 461.)

- The Government says Zell has not alleged an expectation that he will be subject to the FATCA Passthrough Penalty, or that he or his FFI has been subject to, threatened with, or contacted about it. (Opp'n 51.) But Zell does say that he is subject to FATCA (and FBAR) and has recently not complied with reporting requirements, that his client has instructed him not to complete forms seeking information about himself and the client and he has complied, and that he reasonably fears he and/or his client will be deemed recalcitrant and subject to the Passthrough Penalty. (Am.Compl. ¶ 128, 130, RE32-1, PageID# 461.)[6]

- The Government says Plaintiffs did not allege either that they failed to file an FBAR or that the government has imposed an FBAR penalty against them. (Opp'n 17, 49, 51.) But the original Complaint said they reasonably feared they would be subject to unconstitutionally excessive fines if they willfully failed to file an FBAR, the reasonable implication being that they must file it. In the Amended Complaint, all said they don't want to file FBAR, and wouldn't absent penalties, and that they are subject to FBAR.[7] Plaintiff Zell said he

---

[6] Israel is currently deemed compliant, so FATCA is currently supplanted by a yet unagreed IGA's requirements. But if Plaintiffs' challenge to the IGAs succeeds, FATCA again governs in place of *all* IGAs, so FATCA is at issue that way.

[7] In pre-enforcement challenges, as here, plaintiffs are not required to violate laws to challenge them. One may comply with a statute though deeming it unconstitutional and challenge it as being an unconstitutional burden. *See, e.g.*, *Davis v. FEC*, 554 U.S. 724 (2008) (compliant candidate challenged provision without vio-

is not currently complying with FATCA or FBAR reporting requirements. (RE32-1 ¶ 130, PageID# 461.) [8]

• The Government says that Plaintiff Katerina alleges no concrete injury from the separation of assets. (Opp'n 67.) The coerced separation of assets that these plaintiffs wanted to keep together *is* a concrete injury.

• The Government says that Plaintiff Adams alleges no fact suggesting his bank has considered closing his account and so shows no risk of harm. (Opp'n 69.) He states that he has seen banks close the accounts of other U.S. citizens abroad and so reasonably fears this will happen to him. (Am.Compl. ¶ 109, RE32-1, PageID## 456-457.) And taking the complaint as a whole, the recited Democrats Abroad study, coupled with all of the other such closings, proves his fear reasonable.

As illustrated above, applying the duty to construe complaints favorably to

---

lating it). So Plaintiffs are not required to allege that they have violated FBAR or FATCA or had penalties/taxes imposed for doing so. (Opp'n 51, 61.) Nor are they required to allege having received an injury from the FFI Passthrough Penalty (Opp'n 53) because this is a pre-enforcement challenge. They challenge the excessive fines that would flow from noncompliance with challenged provisions, which excessive fines prevent them from violating the provisions they would otherwise violate absent such penalties.

[8] The Government says it has never sought to impose an FBAR penalty against Zell (Opp'n 65), but the Government has nowhere eschewed enforcement, so the provision is not moribund and pre-enforcement challenges allow one to challenge provisions before enforcement begins. He reasonably fears enforcement for non-compliance. (Am.Compl. ¶¶ 130, 132.)

Plaintiffs', the Amended Complaint readily refutes the Government's did-not-allege (and similar) arguments. That duty applies to all current analysis.

## B. Plaintiffs Have Cognizable Interests, Including in Privacy (and Avoiding the Problems Flowing from Its Loss) Under the Conditions at Issue.

As noted in the preceding discussion, Plaintiffs allege a range of ongoing harms that they have cognizable interests in avoiding. And they have explained why they have "a privacy interest in financial records *under the conditions at issue.*" (Br. 29 (emphasis added); *see also id*. Part I.B.) The Government argues that *United States v. Miller*, 425 U.S. 435 (1976), rejected a privacy interest in bank records generally. But that is erroneous for at least three reasons.

First, *Miller* made clear that its holding was *context-specific* by, inter alia, specifically stating that it was not deciding that its holding applied to other listed contexts. *Id.* at 444 n.6. So *Miller* requires a context-specific approach, which Plaintiffs provide. The Government relies on an impermissible generalization.[9]

---

[9] The Government's recitation of three Sixth Circuit cases supporting its generalization about privacy (Opp'n 34-35) are beside the point because they do not deal with the context-specific analysis required by *Miller*. Its reliance (Br. 35) on *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 574 (6th Cir. 2002), is misplaced for at least three reasons. First, while *Overstreet* says "the Constitution does not encompass a general right to nondisclosure of private information," *id.*, Plaintiffs do not assert such a "general" free-floating right unconnected to the specific contexts at issue here. Second, *Overstreet* recognizes such a privacy right in two constitutional contexts: (i) where such a right is "'fundamental' or 'implicit in the concept of ordered liberty"—recognizing such privacy where, as here, security issues support the privacy interest— *id.* at 575-76, and (ii) in the Fourth Amendment context, *id.* at 576-77. Plaintiffs assert privacy interests

Second, the three contexts that *Miller* said its privacy holding did not reach involved (i) "blanket reporting," (ii) "improper inquiry into protected associational activities," and (iii) "the Government, through 'unreviewed executive discretion,' . . . ma[king] a wide-ranging inquiry that unnecessarily 'touch(es) upon intimate areas of an individual's personal affairs,'" instead of "narrowly directed subpoenas duces tecum subject to the legal restraints attendant to such process." *Id.* (citation omitted). The Government tries to distinguish this footnote by arguing that no associational-activity harm (the second context) is asserted here. (Opp'n 36.) But Plaintiffs rely instead on the other two contexts in footnote 6, i.e., blanket, wide-ranging data collection of intimate-personal-affairs details without probable cause, subpoena, or any judicial oversight—only "unreviewed executive discretion." *Id.* (Br. 30-31.) *Miller*'s specific exclusion of these contexts at issue here indicates a strong argument for a privacy interest in the excluded contexts—or else there was no reason for the Court to exclude these contexts.[10]

Third, *Miller* involved a challenge to judicially reviewable "narrowly directed subpoenas" with "the legal restraints attendant to such process." 425 U.S. at 444 n.6. The availability of judicial review was central to the decision. But there is no

---

precisely in these areas. Third, *Overstreet* expressly relied on the fact that much of the information sought to be protected in that case was "already a matter of public record," *id.* at 577, which is not the case here. So *Overstreet* supports Plaintiffs.

[10] Plaintiffs also recited authorities holding that privacy waiver in one context does not waive it in others. (Br. 37-38.)

such judicial oversight of the compelled disclosure at issue in this case. Judicial

oversight, is also mandated by *Los Angeles v. Patel*, 135 S.Ct. 2443 (2015), with

"an opportunity to obtain precompliance review before a neutral decisionmaker,"

*id*. (Br. 23, 36-38.)[11] FATCA and the IGAs provide for no judicial oversight of

FFI's searches of U.S. accounts, and those searches are not limited to situations

with probable cause of wrongdoing. No precompliance review before a neutral

decisionmaker is permitted. (Br. 36-37.) And FATCA provided for notice by an

attempt to get a waiver, of which Plaintiffs are denied by IGAs. (Br. 36 n.16.)[12]

The Government attempts to rely on *Smith v. Maryland*, 442 U.S. 735 (1979),

for the proposition of no privacy interest in information given to third parties.

(Opp'n 35.) But it ignores the responses Plaintiffs have already made to *Smith* (Br.

---

[11] The Government's effort to distinguish *Patel* simply on its facts fails. (Opp'n 36 n.8.) *Patel* involved government collection of blanket data without judicial oversight, just as is the case with challenged provisions/agreements here. The Government's assertion that "there was a reasonable expectation of privacy" (*id.*) evades the very question at issue here—whether there is a privacy interest—and the Government may not avoid the context-sensitive application of *Miller* and *Patel* to the current case by saying that in *Patel* though not in *Miller* there was a cognizable expectation of privacy. The principles stated in *Miller* and *Patel* establish that there is a cognizable expectation of privacy in the specific context here.

[12] The loss of these is one answer to the Government's erroneous argument that Plaintiffs recite no harm from the IGAs. (Opp'n 55.) Other harms are spelled out in the privacy-loss risks of interposing foreign governments between FFIs and the IRS, instead of complying with Congress's FATCA mandate that FFIs report directly. (Br. 32-36.) And the Government's claim that security concerns may not be considered (Opp'n 37 n.9) is erroneous because such concerns are integral to the privacy interest and flow naturally from privacy loss.

36 n.7), which need not be repeated.

The harms from loss of privacy include not just the loss of constitutionally protected privacy but also the financial and security risks that flow from that loss of privacy—especially given known cyber-attacks seeking the information compelled by the challenged provisions/agreements and the unprecedented disclosure to foreign governments resulting from these provisions/agreements, both of which are unprecedented in the privacy cases and raise serious concerns about Americans' security abroad and about the ability of the Government to fulfil its first duty, protecting its citizens. (Br. 22-23, 32-36.) The Government attempts to dismiss these serious concerns in a footnote, claiming they have "no basis in *Miller*" and are "irrelevant" because "the complaint contains no factual allegations underpinning this argument or any attempt to seek standing on the basis of security concerns." (Opp'n 37 n.9.) But that argument fails because Plaintiffs have argued loss of privacy, which includes the harms flowing therefrom, and in their opening brief provided ample examples to show that such harms from the loss of privacy imposed by challenged provisions/agreements are real. *Overstreet* recognized that loss of privacy includes the loss of security that flows therefrom. 305 F.3d at 574 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (privacy interest included safety risks of undercover officers and their families)). And since all implications go to Plaintiffs in dismissal actions, Plaintiffs' assertion of

loss of privacy clearly encompasses the harms that flow therefrom.

## C.  Plaintiffs' Harms Are Fairly Traceable to Government Action, and Requested Relief Will Redress Those Harms.

Plaintiffs established that their harms are fairly traceable to government action and that requested relief would redress those harms, including under coercive-effect standing. (Br. 39-45.) The Government acknowledges coercive-effect standing: "An injury 'produced by' the defendant's 'determinative or coercive effect upon' a third party suffices for standing—but an injury that results from 'the independent action of [a] third party' does not." (Opp'n 32 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).) Coercive-effect standing readily resolves traceability arguments in Plaintiffs' favor, as illustrated by some examples below.

But the Government proceeds to ignore that rule and tries to make coerced-effect actions, e.g., of FFIs, into independent actions. For example it claims, without citing evidence, that "FATCA does not require Saxo to decline U.S. clients or coerce it into doing so" but rejecting American's accounts is simply Saxo's choice. (Opp'n 46.) "Saxo Bank has *chosen* to turn away U.S. clients rather than being coerced into that step by FATCA or an [IGA]." (Opp'n 63 (emphasis in original).) Italicizing "*chosen*" does not prove that the choice was not the result of the coercive effect of FATCA/IGAs. *Choosing* to turn away clients is the very coercive-effect for which Plaintiffs recited ample evidence—which must be accepted as

14

true—that FFIs are denying Americans abroad banking services for essential everyday-living accounts because they don't want FATCA/IGA burdens, and that Plaintiffs are personally experiencing this widespread practice. (*See, e.g.,* Br. 39 n.20.) The Government ignores this evidence.[13] Crucially, Plaintiffs argued that the penalties of the challenged provisions/agreements coerce FFIs to either comply or reject U.S.-related accounts (*see, e.g.*, Br. 38-40) and that such indirect harm suffices for traceability (Br. 41.) Plaintiffs cited *Warth v. Seldon*, 422 U.S. 490 (1975), *Roe v. Wade*, 410 U.S. 113 (1973), and *Natural Resources Defense Counsel v. U.S. Food and Drug Admin.*, 710 F.3d 71 (2d Cir. 2013), for the proposition that indirect coerced harm suffices, even if it is only "a contributing factor." (Br. 41.)

The government never addresses *Warth* on this issue and ignores the other two cases, so the Government's argument that the actions, e.g., of FFIs, are not fairly traceable to challenged provisions/agreements is already suspect for failing to engage the required analysis. For example, the Government says "Crawford's alleged loss of business is not fairly traceable to the challenged provisions of FATCA be-

---

[13] The Government even argues that this evidence is "speculation" (Opp'n 53), but for dismissal purposes Plaintiffs' allegation must be accepted as true, as the Democrats Abroad study shows it to be. And the citation of a case requiring courts to "'assume that [actors] will conduct their activities within the law'" (*id.* (citation omitted)) is beside the point because it is legal for FFIs to reject U.S.-person accounts motivated by FATCA/IGAs.

cause it results from the independent actions of third parties." (Opp'n 46.) But that continued assertion cannot be taken seriously given the Government's failure to show why the coercive aspects of the challenged provisions/IGAs on FFIs do not suffice for traceability under the coerced-harm, indirect-harm, contributing-factor authorities that the Government ignores.

Similarly, the Democrats Abroad study shows that FATCA/IGAs are causing widespread relationship harms: "'their relationships with their non-American spouses are under strain.'" (Br. 26 (citation omitted).) And some Plaintiffs here verify they are experiencing the same such problems as many others have. Yet the Government dismissively cites the district court for the proposition that "disagreement with one's spouse about a government policy is not a concrete injury on which a federal lawsuit is based." (Opp'n 41.) But the court errs because the "disagreement" is based on asserted constitutional privacy and equal-protection rights and also on government-coerced actions that are the logical result of the Government's actions in enacting FATCA, FBAR, and IGAs, e.g., the separation of accounts. The Government says that Johnson separated accounts merely to protect his wife's privacy and so he is asserting the rights of a third party. (Opp'n 42.) The erroneous third-party argument will be further addressed below, where Plaintiffs reiterate that they rely on *no* third-party harms. *See* Part I.E. But for now, note that the Government recites, but then promptly tries to ignore, the harm actually al-

16

leged, i.e., *Johnson's* harm of having formerly joint accounts now separated, "with the result that *he* no longer has an ownership interest in his home or various other assets." (*Id.* (emphasis added).) The Government then argues that "any harm Johnson might suffer from the separation of assets is not traceable to FATCA" but is "a self-inflicted injury." (*Id.*) This statement is, first, a concession of the actual harm Johnson asserts and, second, a failure to apply what the Government has already conceded, i.e., actions *coerced* by Government action are cognizable harm for standing. And "coercion" does not require direct Government action because it may be indirect; it does not require literal twisted arms or the like because it may result from penalties; and it does not require that government action be the sole reason for action because it need only be "'a contributing factor.'" (Br. 40-41 (citation omitted).)

Another example of an erroneous non-traceability argument is the Government's argument that Katerina Johnson suffers no harm because she is not a U.S. citizen and so not subject to any challenged provision/IGA. (Opp'n 66-67.) But of course, this argument ignores the indirect coercive-effect harm, described above, that she experiences as a result of being married to a U.S. Citizen. And the Government claims she "alleges no concrete injury from . . . separation" of her accounts from those of her spouse (Opp'n 79), but the separation itself is cognizable harm traceable to challenged provisions/IGAs. Thus, she has concrete injury that

is traceable to government action.

Applying the same traceability principles shows that Lois Kuettel has harms traceable to challenged provisions/IGAs. (Opp'n 67-68.) Regarding FBAR, the Government says her injury is traceable to her parents who will not transfer the account to her "out of the erroneous belief that the FBAR reporting requirement violates Lois's constitutional rights." (Opp'n 67.) But this "erroneous belief" argument puts the cart before the horse with the Government arguing merits to try to eliminate standing based on no harm. Setting aside the constitutionality of FBAR for merits consideration, the present issue is whether FBAR is a contributing factor to her not having an account, and it clearly is. Next, she (like others) need not violate FBAR to challenge it because the whole point of pre-enforcement challenges is to allow constitutional challenges without putting oneself at risk by violating the law. (Opp'n 68.) The Government's reliance on the "most banks" allegation (*id.*) is erroneous because all inferences go the Plaintiffs and the inference is that all banks declined her account with those who would "accept her as a client once she renounced her U.S. citizenship" saying they would not presently accept her due to "the consequent need to comply with FATCA and the Swiss IGA." (Am.Compl. ¶ 82, RE32-1, PageID# 451.) This is clarified by the later statement that "Lois desires to have an account in her name" but "she is unable to do so as a result of FATCA and the Swiss IGA. Banks have been unwilling to open an ac-

count in her name due to her U.S. citizenship . . . ." (*Id.* ¶ 86, PageID# 452.) And
the Government's assertion that she is unharmed due to an alleged "concession
that other banks would offer her *better* terms if the account were in her name"
(Opp'n 68) is erroneous because the *present* account in her father's name would
be more beneficial to her if in her name, not some other unavailable account (ab-
sent renouncing U.S. citizenship, which she cannot yet do). (Am.Compl. ¶¶ 83, 85,
RE32-1, PageID## 451-452.)

   And the foregoing traceability principles show that Richard Adams has harms
traceable to the challenged provisions/IGAs. (Opp'n 68-69.) He and Donna-Lane
were married in 2015, and because he is a U.S. citizen "their joint accounts are
subject to the requirements of the Swiss IGA, French IGA, FATCA, and the
FBAR," information in the joint account has been "disclosed to the IRS and the
Treasury Department," he reasonably fears having accounts closed "because of his
U.S. citizenship, FATCA, and the IGAs," and he meets the statutory trigger for
FBAR filing and reasonably fears their joint accounts will be subject to unconsti-
tutionally excessive fines if he were to not file FBAR as he wishes to do, believing
it unconstitutional. (*Id.* PageID# 455-458.)

   Another Government approach to its non-traceability argument is to claim a
string of "did not allege" claims. (Opp'n 40-48.) But Plaintiffs did make allega-
tions sufficient for standing as discussed above. *See* Part I.A. The duty to construe

complaints in a manner favorable to Plaintiffs eliminates the Government's claims when Plaintiffs' allegations are accepted as true and all implications are given to Plaintiffs.

In sum, the harms Plaintiffs recite are fairly traceable to the challenged government actions.

## D.  The Harms Plaintiffs Experience Are Not Generalized Grievances.

Plaintiffs established that (i) the district court did not rely on a generalized-grievance rationale, (ii) just because many suffer from government action does not make a claim a generalized grievance, and (iii) "[s]ince Plaintiffs have actual, personal injuries to cognizable interests, their harms are not mere generalized grievances." (Br. 45-46.) Without answering the recited argument and authority, the Government continues to make generalized-grievance arguments, which must be disregarded absent the Government's needed response to arguments already made. For example, the Government alleges that Plaintiffs assert a mere interest in the "proper application of the Constitution and laws" or mere "discomfort" with FBAR, and that even opposing FBAR "based on . . . the Constitution" is an insufficient harm for standing. (Opp'n 40-41)) But Plaintiffs assert *personal harms* concerning FBAR, including invasion of privacy and equal-protection rights, relationship disruption, inability to give a daughter a college account, and imposition of unconstitutional penalties coercing compliance. (*See, e.g.*, Br. 27.) Those are no

mere generalized grievances.

### E. The Harms Plaintiffs Assert Are Not Those of Third Parties.

Plaintiffs reiterated that they rely on no interests of third parties. (Br. 46-47.) Yet the Government says Plaintiffs do what they do not. (Opp'n 44-45.)

For example, the Government says that Plaintiff Kuettel says his daughter will get better bank terms with her own account. (*Id.*) But that is a personal harm for his plaintiff *daughter*, Lois Kuettel, and *his* personal harm is that he cannot give his daughter a college account without having the money seized for FBAR penalties.

The Government says Zell alleges "that his clients have suffered various indignities at the hands of Israeli banks" and alleges invasion of the attorney-client privilege that "belongs to the client alone." (Opp'n 45 & n.13.) But while a client may waive the attorney-client privilege, absent such a waiver an attorney has a strong interest in preserving the privilege. And Plaintiff Zell verifies loss of business, as the Government acknowledges (Opp'n 47-48) and that his harms are ongoing (Am.Compl. ¶ 133, RE32-1, PageID# 462). Moreover, as a fiduciary and trustee he has a personal interest in protecting information about client accounts. And the Government concedes that the Israeli IGA requires disclosure of such accounts. (Opp'n 48.) The Government deems Israel as FATCA-compliant based on that pending IGA, and FFIs are already actively seeking information for IGA com-

pliance as the evidence shows.

Another example is the Government's argument that Plaintiffs "seek to vindi-cate the Eighth Amendment rights of third-party [FFIs]." (Opp'n 52.) Of course, the Government admits that Plaintiffs assert that FFIs "'likely would not comply with FATCA' absent the tax'" (Opp'n 53 (citation omitted), which is a central traceability argument, *see supra* Part I.C, not the assertion of FFI's rights. The Gov-ernment's attempt to dismiss this traceability argument as "speculation" is incon-sistent with the duty to accept assertions as true and with the evidence of the Dem-ocrats Abroad study which shows that FFIs are rejecting U.S.-person accounts be-cause of FATCA (and the IGAs).

So Plaintiffs rely on their own injuries, not those of third parties.

## F.  Senator Paul Has Standing to Challenge IGAs.

Plaintiffs explained Senator Paul's harm, showing why *Raines v. Byrd*, 521 U.S. 811 (1977), does not control because here the "process" is being altered, how Senators have a unique checks-and-balances role, and how *Coleman v. Miller*, 307 U.S. 433 (1939), supports standing. (Br. 47-49.) The Government fails to address the core issues. First, it simply asserts that sole-executive-action IGAs don't change the constitutional process by which such agreements must be approved though "the process *is* affected because the IGAs are not being submitted for vote." (Br. 48.) Second, it ignores the unique role of Senators in the constitutional

design. Third, it ignores *Coleman*'s recognition of official-capacity harm. (Br. 48-49.) Fourth, it relies on *Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117, 126 (2011), for "no personal right" to vote. (Opp'n 57.) But *Coleman* does recognize official-capacity harm, and *Carrigan* was about whether a legislator's recusal refusal could be based on his First Amendment speech rights, which is not at all at issue here. Moreover, *Carrigan* dealt neither with *Raines*'s affected-process harm nor *Coleman*'s official-capacity harm, so it cannot control.

## G. Plaintiffs Have Standing for All Counts.

Based on the foregoing and reasons set out next, one or more Plaintiffs have standing to challenge each Count.[14]

### 1. Count 1

All Plaintiffs, except Senator Paul, have standing to challenge the IGAs as unconstitutional sole executive agreements under Count 1 because (i) the IGAs have violated and continue to violate their privacy rights (*see,* e.g., Am.Compl. ¶¶ 25-26, 40, 43, 50, 52-53, 64-65, 87, 99-101, 112-113, 123, 131, RE32-1, PageID## 439, 442-443, 444-447, 452, 455, 457, 459, 461), (ii) Plaintiffs have had difficulties in obtaining financial services for daily living (*see, e.g., id*. at ¶¶ 23, 73-74, 82, 97, 109, 111, PageID## 439, 448-449, 451, 454, 457), and (iii) the IGAs have

---

[14] Because at least one plaintiff has standing for each claim, others' standing need not be considered. *McConnell v. FEC*, 540 U.S. 93, 233 (2003) (collecting cases) (standing of intervenors not decided because FEC had standing).

caused damage to professional and familial relations (*see, e.g., id.* at ¶¶ 22, 40, 51, 63, 75, 110, 124-126, PageID## 438-439, 442, 444, 446, 449, 457, 459-460). Senator Paul has standing to challenge the IGAs because he is being harmed by not being able to vote on them. *See* Part I.F.[15]

### 2.  Count 2

All Plaintiffs have standing to challenge the IGAs as unconstitutional sole executive agreements under Count 2 for the same reasons as Count 1.

### 3.  Count 3

Count 3 challenges the heightened reporting requirements for foreign financial accounts for denying U.S. citizens living abroad the equal protection of the laws.[16]

---

[15] On all counts requested relief will redress Plaintiffs harms. *See* Part I.C. The Government erroneously says enjoining IGAs but leaving FATCA in place would leave Plaintiffs' harms unredressed. (Opp'n. 27, 55.) But FATCA is more protective, *see supra* at 12 & n. 12, so enjoining IGAs would redress harm, and Plaintiffs also challenge FATCA, which is at issue absent IGAs.

[16] The Government tries to conflate this equal-protection challenge with a privacy-right challenge. (Opp'n 34, 36.) But this challenge arises because "U.S. citizens living in a foreign country are treated differently than U.S. citizens living in the United States." (Am.Compl. ¶ 176, RE32-1, PageID# 478.) The disparate treatment is differing burdens imposed on Americans needing everyday-living accounts abroad and those here (who don't bear the burdens of challenged provisions/IGAs). Those so affected have standing based on the disparate treatment. Plaintiff mention the lack of governmental "interest . . . in prying into the private affairs of citizens living abroad" (*id.* ¶ 177) but that is not the basis for standing, and the Government may not subsume this challenge under the privacy-right umbrella.

Affected Plaintiffs have standing based on the loss of equal protection.[17] Within

Count 3, Plaintiffs challenge three separate provisions: FATCA, IGAs, and FBAR.

Plaintiffs Crawford, Johnson, Lois Kuettel, Kish, Nelson, Adams, and Zell have

standing to challenge FATCA FFI reporting, IGAs, and FBAR for the reasons

listed in Count 1. Plaintiffs Johnson and Zell also have standing to challenge

FATCA individual reporting because they allege that they trigger the statutory

minimum for required reporting. (Am.Compl. ¶¶ 43, 130, RE32-1, PageID## 443,

461; 26 U.S.C. 6038D(a).) While the statutory trigger is currently higher, that reg-

ulation is pursuant to discretionary authority. *See* Part I.A. n. 6. So the trigger

could easily return to the statutory level. As a result, Plaintiffs Johnson and Zell

have standing to challenge FATCA individual reporting, in addition to their chal-

lenges to the IGAs and FBAR.

### 4. Count 4

All Plaintiffs, except Senator Paul, have standing to challenge the FATCA FFI

---

[17] The Government asserts that Plaintiffs challenge "the provision of the Model 1 agreements that concerns reporting of account balances, rather than the provision concerning the reporting of interest." (Opp'n 20.) Yet, the Government fails to acknowledge that this is only relevant under the Equal Protection Count. Plaintiffs challenge the reporting of account balances because the only information reported on domestic accounts is the amount of interest paid to the accounts during a year. (Am.Compl. ¶ 175, RE32-1, PageID## 477.) As a result, the reporting of account balances requirement under the IGAs treats U.S. citizens living abroad differently that U.S. citizens living in the United States. (*Id*. at ¶¶ 175-176.) Plaintiffs challenge both the reporting of account balances and the reporting of interest in other counts. (*Id*. at ¶¶ 207-208.)

Penalty as unconstitutional under the Excessive Fines Clause. The FFI Penalty causes FFIs to either comply with FATCA/IGAs or discontinue U.S.-related accounts. Though Plaintiffs are not FFIs, and so not directly affected by the FFI Penalty, they are the target of the FFI Penalty and such indirect harm is cognizable. The cognizable harms Plaintiffs have experienced are the same as Count 1.

### 5.  Count 5

All Plaintiffs, except Senator Paul, have standing to challenge the FATCA/IGA Passthrough Penalty as unconstitutional under the Excessive Fines Clause of the Eighth Amendment. Plaintiffs affected by FATCA/IGAs have standing for the reasons stated regarding Count 1 because the FFI Passthrough Penalty is designed to punish noncompliance by account holders. (Am.Compl. ¶ 191, RE32-1, PageID## 481.) And Plaintiffs would like to be noncompliant because they are burdened by FATCA/IGAs, which they believe are unconstitutional, but cannot be recalcitrant because of the Passthrough Penalty. (*See, e.g.,* Am.Compl. ¶¶ 26, 43, 53, 65, 87, 101, 113, 131, RE32-1, PageID## 439, 443, 444-445, 446-447, 452, 455, 457, 461-462.)

### 6.  Count 6

All Plaintiffs, except Senator Paul, have standing to challenge the FBAR Willfulness Penalty as unconstitutional under the Excessive Fines Clause. Plaintiffs believe that the FBAR and Willfulness Penalty are unconstitutional and would

therefore willfully not comply with the reporting requirement, if not for the penalty.[18] Furthermore, Plaintiffs alleged that they reasonably fear that they will be subject to the Willfulness Penalty for willful failure to file FBARs, thus indicating that they are subject to FBAR and are either (1) currently filing FBARs or (2) not complying with the reporting requirement. (Am.Compl. ¶¶ 27, 44, 54, 66, 75, 86, 102, 114, 130, 132, RE32-1, PageID## 439-440, 443,445, 447, 449, 452, 455-456, 458, 461-462.)

### 7. Count 7

Plaintiffs Crawford, Johnson, Katerina Johnson, Kish, Nelson, Adams, and Zell have standing to challenge FATCA's information reporting requirements as unconstitutional under the Fourth Amendment. FFI's are compelled by the FFI Penalty and IGAs to either perform these searches and reporting or not accept U.S.-related accounts. As a result, the above mentioned Plaintiffs have either had their privacy rights violated, have had difficulty obtaining financial services for daily living, or have had damage to their professional and familial relations. *See* Count 1.

---

[18] For a pre-enforcement challenge, one need only "'inten[d] to engage in a course of conduct arguably affected with a constitutional interest'" (Br. 30 (citation omitted)), not intend to violate the law (or do so), as the Government substitutes (Opp'n 27, 51). This applies in all contexts here.

### 8. Count 8

Plaintiffs Crawford, Johnson, Katerina Johnson, Kish, Nelson, Adams, and Zell have standing to challenge the IGA's information reporting requirements as unconstitutional under the Fourth Amendment for the reasons stated in Count 7.

### II. Plaintiffs Should Have Been Allowed to Amend the Complaint.

Leave to amend was denied based on lack of standing, but because Plaintiffs do have standing leave should have been granted. (Br. 55-57.) The Government erroneously bases much of its argument on the original Complaint, then tries to treat the Amended Complaint in isolation. But the standing analysis must be based on the Amended Complaint, construed in a manner favorable to Plaintiffs, and doing so demonstrates standing and non-futility. *See supra* Part I.

## Conclusion

This Court should reverse the dismissal order and remand with instructions to allow Plaintiffs to amend the complaint.

Dated: September 15, 2016                    Respectfully Submitted,

                                             /s/ James Bopp, Jr.
                                             James Bopp, Jr.
                                             Richard E. Coleson
                                             Courtney Turner Milbank
                                             THE BOPP LAW FIRM, PC
                                             1 South Sixth St.
                                             Terre Haute, IN 47807–3510
                                             Telephone: (812) 232–2434
                                             *Counsel for Plaintiffs-Appellants*

## Certificate of Compliance with Rule 32(a)

This brief complies with FRAP 32(a)(7). It contains 7,000 words, as verified

by the word count feature of WordPerfect X6, the word processor that created it.

/s/ James Bopp, Jr.

# Declaration of Plaintiff Kish
## EXHIBIT A

No. 16-3539

**In the United States Court of Appeals
for the Sixth Circuit**

**Mark Crawford, Senator Rand Paul** in his official capacity
as a member of the United States Senate, **Roger Johnson, Daniel Kuettel,
Stephen J. Kish, Donna-Lane Nelson,** and **L. Marc Zell,**
*Plaintiffs-Appellants*

*v.*

**United States Department of the Treasury, United States Internal Revenue
Service,** and **United States Financial Crimes Enforcement Network,**
*Defendants-Appellees.*

On Appeal from the
United States District Court for the Southern District of Ohio

**Declaration of Stephen J. Kish**

James Bopp, Jr.
Richard E. Coleson
Courtney Turner Milbank
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807−3510
Telephone: (812) 232−2434
Facsimile: (812)235-3685
E-mails: jboppjr@aol.com,
        rcoleson@bopplaw.com,
        cmilbank@bopplaw.com
*Counsel for Plaintiffs-Appellants*

## Declaration of Stephen J. Kish

I, Stephen J. Kish, make the following declaration pursuant to 28 U.S.C.
§ 1746:

**1.**    I am over eighteen years of age and my statements set forth below are
based on personal knowledge.

**2.**    I am a citizen of the United States of America and a citizen of Canada.
I reside with my wife in Toronto, Ontario, Canada.

**3.**    On August 24, 2016, I swore the Oath of Renunciation of United
States citizenship before a Consular Officer at the U.S. Embassy in Reykjavik,
Iceland. I am now awaiting approval of my renunciation from the U.S. Department
of State. Once approved, the U.S. Department of State will provide me with a
Certificate of Loss of Nationality. This approval process can take six to twelve
months, or longer, and until the Department of State decides to approve my
renunciation, I remain a U.S. citizen.

**4.**    In order to renounce my citizenship, I paid the exorbitant cost of
$2,350 plus the cost of air fare from Toronto, Canada to Rejkjavik, Iceland and for
accommodations. I selected the U.S. Embassy in Iceland because I could not obtain
a renunciation appointment in Canada in a timely manner due to the many other
Canadians requesting renunciation of U.S. citizenship at consulates in Canada.

5.      I took this extreme action of renouncing my citizenship to protect my pure Canadian wife from continued harm from reporting requirements under the Foreign Account Tax Compliance Act ("FATCA"), the Canadian Intergovernmental Agreement ("Canadian IGA") which purportedly implements FATCA in Canada, and the Report of Foreign Bank and Financial Accounts ("FBAR"), and because of the impossibility of our financial retirement planning because my wife is married to a U.S. citizen. Due to the above reporting requirements and the U.S. laws enforced by FATCA, my United States citizenship is a threat to my wife's privacy and financial survival.

6.      As a result of FATCA, the Canadian IGA, and FBAR, I am required to disclose private information about our joint bank account. My wife has continually insisted, angrily and using strong words that are not otherwise used in my presence, that I not turn over her private joint account data to a foreign government. This is because she is a Canadian citizen and *not* a U.S. citizen. Yet, each year I have acted against her wishes and violated her privacy to comply with the reporting requirements. I did so to avoid excessively high penalties that would come from willful violations.

7.      The reporting requirements have also caused significant stress for me. I had to either comply with reporting requirements under FATCA, the Canadian

IGA, and FBAR or honor my wife. The two cannot co-exist. As a result, I renounced my citizenship to protect my spouse's rights and financial survival. If I were not married, I would have continued to comply with FATCA, the Canadian IGA, FBAR reporting requirements, and the laws enforced by FATCA, and would have remained a U.S. citizen.

**8.** Renouncing my citizenship, while necessary to protect my pure Canadian wife, is a significant and ongoing harm to me. I value my American citizenship and would not have given it up had it not been for the intrusive reporting requirements and threat of excessive fines under FATCA, the Canadian IGA, FBAR, and the laws enforced by FATCA

**9.** Though I will no longer be an American citizen once my renunciation is approved, I will continue to fight for the rights of other ex-patriots who are facing similar harms caused by unconstitutional laws like FATCA, intergovernmental agreements, and FBAR.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 12 2016.

Stephen J. Kish
41 Winston Grove
Toronto, Ontario M8Y 2L1

DECLARATION OF
STEPHEN J. KISH                    -4-

# Certificate of Service

I hereby certify that on September 15, 2016, the foregoing document was filed electronically using the Court's CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. The following persons should be notified:

Richard Caldarone
U.S. Department of Justice
Tax Division, Appellate Section
richard.p.caldarone@usdoj.gov

Gilbert Steven Rothenberg
U.S. Department of Justice
Tax Division, Appellate Section
appellate.taxcivil@usdoj.gov

Teresa E. McLaughlin
U.S. Department of Justice
Tax Division, Appellate Section
teresa.e.mclaughlin@usdoj.gov

/s/ James Bopp, Jr.